J. HAMPDEN DOUGHERTY et al., as Trustees under the Will of WILLIAM D. THOMPSON, Deceased, Respondents, *v.* JOSEPHINE L. THOMPSON, Individually, and as Administratrix with the Will Annexed of STEPHEN J. THOMPSON, Deceased, Appellant, and NINA O'DONNELL et al., Respondents.

J. HAMPDEN DOUGHERTY, as Trustee under the Will of WILLIAM D. THOMPSON, Deceased, Respondent, *v.* JOHN C. THOMPSON, Individually, and as Trustee under the Will of WILLIAM D. THOMPSON, Deceased, et al., Respondents, and JOSEPHINE L. THOMPSON, as Administratrix with the Will Annexed of STEPHEN JAY THOMPSON, Deceased, Appellant.

1. WILL — CONTINGENT ESTATE — WHEN SHARE OF INCOME FROM TRUST DOES NOT PASS TO LEGATEE OF BENEFICIARY. The income accruing after the death, without issue, of a child entitled thereto under a clause of a will creating a trust in personal property for the benefit of a husband and wife, and their children during the lives of the former or the survivor of them, the *corpus* on their death to be paid to the children and the issue of such as have died leaving issue, providing for the payment of a specified amount to the husband and the residue of the income to the wife for the support of herself and children during their minority, and as each child reaches majority he or she to receive one equal share of the surplus above the amount payable to the husband, the same being divided "into as many equal shares as there shall be children," and one more share for their mother, does not pass under his will, but goes to the remaining children during the continuance of the trust, since he takes no vested estate therein.

2. SAME. No vested estate which will pass under the will of a *cestui que trust* dying without issue, is created in his favor in the income of trust property accruing after his death, by a clause of a will providing for the payment thereof to designated persons during the life of one of them and for a sale and distribution of the proceeds among them on the latter's death, where it further provides that the issue of any such person

deceased shall take his share of such income and of the proceeds of the property on the termination of the trust.

3. WHEN ESTATE IF VESTED IS DEFEATED. A contention that because the deceased beneficiary at any time during his life would have had an immediate right to the possession of a share upon the then ceasing of the precedent estate, and, therefore, under the statute (1 R. S. 723, § 13), declaring that future estates are vested when there is a person in being who would have an immediate right to possession upon the ceasing of the intermediate or precedent estate, he took a vested estate which passed by his will, cannot be sustained, since if vested it was subject to be and was defeated by his death during the existence of the trust.

*Dougherty* v. *Thompson,* 54 App. Div. 456, affirmed.

(Argued March 25, 1901; decided June 11, 1901.)

APPEALS from judgments of the Appellate Division of the Supreme Court in the first judicial department, entered November 26, 1900, modifying and affirming as modified judgments of Special Term in the two above-entitled actions, brought to obtain construction, respectively, of the third and ninth paragraphs of the will, of William D. Thompson, deceased.

The third clause of the will involved in the first-entitled action reads as follows: " *Third.* One other of said shares amounting at par to one hundred thousand dollars I give and bequeath unto my executors herein named, or such of them as shall qualify and act as executors of this my will, the survivors and survivor of them and their successors and assigns, upon the trusts and to the intents and uses following, that is to say, to collect and receive the interest and dividends thereon falling due after my decease, and out of the net income to apply to the use of my nephew, William D. Thompson, Junior, of Baltimore, in the state of Maryland, the annual sum of seven hundred dollars, to be reckoned from the time of my death and payable half-yearly during his life and the whole residue of such net income to apply to the use of Josephine, the wife of the said William D. Thompson, Junior, and their children, by paying the same to her for the support of herself and children during their minority, and as each child attains the age of twenty-one, he or she shall be entitled to receive one equal

share of such surplus of income above seven hundred dollars per annum, the same being divided into as many equal shares as there shall be children of the said William D. Thompson, Junior, and Josephine, his wife, and one more share for the said Josephine, which she shall be entitled to receive for her own use during her life, after all the said children shall have attained the age of twenty-one.

" In case of the death of the said William D. Thompson during the life of said wife, the portion of income hereinbefore set apart for him to be added to the other shares in equal proportion.

" In case the said Josephine shall at any time marry another husband, the right to share of said income shall thenceforth cease. In which event, or in the event of her death during the lifetime of the said William D. Thompson, Junior, the share of income hereinbefore set apart for her shall be added to the shares of the said children in equal proportion.

" Upon the death of the longest liver of them the said William D. Thompson, Junior, and Josephine, his wife, this trust shall cease and the trustees shall forthwith transfer and pay over the whole of the trust property and the proceeds and increase thereof to the children of the said William D. Thompson, Junior, and Josephine, his wife, and, if any of said children shall have died leaving issue, such issue shall receive their parent's share."

The ninth clause of the will which is involved in the second action reads as follows : " *Ninth.* The foregoing bequests being first duly provided for and not otherwise, I give to my nephew John B. Thompson for his life, my building and lot No. 139 Broadway, in the city of New York, and upon his death I give and devise the same to my said executors, the survivors and survivor of them, their successors and assigns upon trust to receive the income thereof during the life of John C. Thompson, son of said John B. Thompson, and apply the same as follows : One-quarter to the use of the said John C. Thompson, and one-quarter to the use of his mother, the wife of the said John B. Thompson, and if she shall die or

remarry within said term, then from that time to apply the entire half of said income to the use of the said John C. Thompson, and the other half to apply during the whole of said term to the use of all the other grandnieces and grand-nephews of mine, in equal shares, the issue of any deceased taking their parent's share; and upon the death of the said John C. Thompson, to sell and convey the said property in fee, and to distribute the proceeds among all my grandnieces and grandnephews, in equal shares, the issue of any deceased grandnephew or grandniece taking their parent's share."

Other facts are stated in the opinion.

*Henry B. B. Stapler* for Josephine L. Thompson, appel-lant. The wording of the paragraphs and of the entire will shows that it was the manifest intent of the testator that the interest of Stephen J. Thompson under the third and ninth paragraphs of the will should vest in him upon the death of the testator. (*Bowditch* v. *Ayrault*, 138 N. Y. 229; *Matter of Tienken*, 131 N. Y. 391.) The interest of Stephen J. Thompson under the third and ninth paragraphs of the will was an interest which vested in him at the death of the tes-tator and passed under his will to his mother, the said Josephine L. Thompson, and the income of the share of the said Stephen J. Thompson, under the trusts created in said clauses, passed to Mrs. Thompson as the person entitled to the vested estate. (1 R. S. 773, § 2; *Mills* v. *Husson*, 140 N. Y. 104; *Cook* v. *Lowry*, 95 N. Y. 103; *Delafield* v. *Shipman*, 103 N. Y. 463; 1 R. S. 727, § 44; *Everitt* v. *Everitt*, 29 N. Y. 72; *Bliven* v. *Seymour*, 88 N. Y. 478; *Van Brunt* v. *Van Brunt*, 111 N. Y. 179; *Moore* v. *Littel*, 41 N. Y. 66; *Matter of Brown*, 154 N. Y. 321; *Goebel* v. *Wolf*, 113 N. Y. 413; *Bowditch* v. *Ayrault*, 138 N. Y. 229.) The argument sought to be made against the non-vesting of those interests in said Stephen J. Thompson, based upon the provision in the third clause, that "if any of said children shall die, leaving issue, such issue shall receive their parent's share;" and, upon the provision in the ninth clause, that " the

issue of any deceased grandnephew or grandniece taking their parent's share," is clearly erroneous. (*Bowditch* v. *Ayrault*, 138 N. Y. 229 ; *Strother* v. *Dutton*, 1 DeG. & J. 675 ; *Baldwin* v. *Rogers*, 3 DeG., M. & G. 649 ; *Etches* v. *Etches*, 3 Drewry, 447 ; *Matter of Bennett*, 3 K. & J. 280 ; *Paget* v. *Melcher*, 156 N. Y. 406 ; *Clark* v. *Cammann*, 160 N. Y. 315 ; *Matter of Tienken*, 131 N. Y. 407.) The direction to divide or distribute upon the termination of the trust created under the third and ninth paragraphs does not prevent the vesting in Stephen J. Thompson of his share of the remainder. (1 Jarman on Wills, 840 ; Williams on Executors [9th ed.], 1108 ; *Packham* v. *Gregory*, 4 Hare, 396 ; *Watson* v. *Hayes*, 5 Myl. & Cr. 125 ; *Matter of Bennett*, 3 K. & J. 280 ; *Matter of Theeds*, 3 K. & J. 375 ; *Halifax* v. *Wilson*, 16 Ves. 168 ; *Leeming* v. *Sherratt*, 2 Hare, 14 ; *Sweet* v. *Chase*, 2 N. Y. 73 ; *Matter of Young*, 145 N. Y. 535.) Apart from a rule of construction there is no reason to treat these two gifts as contingent ; and this rule is never applied unless the language of·the will creates a contingency. Such contingency cannot be deduced from the unaided force of the rule, and the rule can never prevail against even a slight indication of the testator's intention. (*Matter of Young*, 145 N. Y. 535 ; *Matter of Tienken*, 131 N. Y. 391.) The gift of intermediate income shows a clear intention to vest in the beneficiaries the *corpus* from which the income is to be derived. (*Robert* v. *Corning*, 89 N. Y. 225 ; *Matter of Brown*, 154 N. Y. 313 ; *Tucker* v. *Bishop*, 16 N. Y. 402 ; *Patterson* v. *Ellis*, 11 Wend. 259 ; *Packham* v. *Gregory*, 4 Hare, 396 ; *Hansen* v. *Graham*, 6 Ves. 239 ; Schouler on Wills, § 562 ; 1 Jarman on Wills, 614.)

*Levi S. Tenney* for Nina O'Donnell, respondent ; *William T. Tomlinson* for Marie Louise Norris, joining in brief. The income was given to Josephine L. Thompson and her children as a class, and the survivors of the class at the time of distribution are entitled to the income. (*Matter of Smith*, 131 N. Y. 239 ; *Teed* v. *Morton*, 60 N. Y. 506 ; *Matter of Seebeck*,

140 N. Y. 241; *Delafield* v. *Shipman*, 103 N. Y. 463; *Matter of Viele*, 35 App. Div. 211.) If the respondent is wrong in her contention that her mother, her sister and herself are entitled to the income as the survivors of a class, this respondent and her sister are entitled to the income as being the persons presumptively entitled to the next eventual estate. (*Cook* v. *Lowry*, 95 N. Y. 103; *Delafield* v. *Shipman*, 103 N. Y. 463; *Miller* v. *McBlain*, 98 N. Y. 517; *Matter of Denton*, 137 N. Y. 428; *Matter of Viele*, 35 App. Div. 211; *Clark* v. *Cammann*, 160 N. Y. 315; *McGillis* v. *McGillis*, 154 N. Y. 532; *Matter of Baer*, 147 N. Y. 348; *Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125; *Goebel* v. *Wolf*, 113 N. Y. 405, 411.) During the life of the trust, the children of William D. Thompson and of Josephine L. Thompson are not entitled to receive all the income of the principal fund which is ultimately to be paid over to them. This is indicative of the intent of the testator that the principal fund should not vest in them until the period of distribution. (*Delafield* v. *Shipman*, 103 N. Y. 463; *Warner* v. *Durant*, 76 N. Y. 133; *Smith* v. *Edwards*, 88 N. Y. 92; *Shipman* v. *Rollins*, 98 N. Y. 311; *Watson* v. *Hayes*, 5 Myl. & Cr. 125; *Battsford* v. *Kebbell*, 3 Ves. 363; *Leake* v. *Robinson*, 2 Mer. 363; *Hanson* v. *Graham*, 6 Ves. 239; *Steinway* v. *Steinway*, 163 N. Y. 183; *Robert* v. *Corning*, 89 N. Y. 225; *Clark* v. *Cammann*, 160 N. Y. 315.) While rules of construction often control the determination of the meaning of wills, they all have exceptions and must give way to the intention of the testator as expressed in the will. Under the ninth clause the interest of the grandnephews and nieces in income is limited upon their respective lives, and their right to share in the proceeds of the sale of the property is contingent upon their surviving John C. Thompson. If they survive, they share; if they do not survive, their issue share; if they leave no issue, the survivors of the class take the whole. (*Delaney* v. *McCormack*, 88 N. Y. 174; *Warner* v. *Durant*, 76 N. Y. 136; *Vincent* v. *Newhouse*, 83 N. Y. 505; *Teed* v. *Morton*, 60 N. Y. 506; *Hoghton* v. *Whitgreave*, 1 J. & W. Ch. 145.)

*Charles C. Hoge* for J. Hampden Dougherty, respondent. No gift was made of any part of the principal so as to sever it from the general fund, nor was interest directed to be paid to any child upon the principal so alleged to be severed. There is no correspondence between the fraction of income which each child receives and the fraction of principal which it may ultimately receive if it survive to the end of the trust term. (*Smith* v. *Edwards*, 88 N. Y. 107; *Steinway* v. *Steinway*, 163 N. Y. 198.) The cardinal question is that of intention, and the meaning of the will in question is to be obtained by a careful analysis of the provisions of the will itself. (*Matter of Brown*, 154 N. Y. 321; *Steinway* v. *Steinway*, 163 N. Y. 183.) By the provision of the ninth article, with respect to the distribution of the proceeds of the *corpus*, the testator plainly meant that nobody should share therein, excepting grandnephews and grandnieces and their issue. (*Delaney* v. *McCormack*, 88 N. Y. 174; *Teed* v. *Morton*, 60 N. Y. 506.)

*Charles E. Lydecker* for Mary R. Thompson et al., respondents. The intent of the testator in paragraph nine was to create a power in trust for the benefit of a class to be determined at the period of distribution. (*Moffett* v. *Elmendorf*, 152 N. Y. 475; *Savage* v. *Burnham*, 17 N. Y. 561; *Matter of Brown*, 154 N. Y. 326; *Downing* v. *Marshall*, 23 N. Y. 366; *Doane* v. *M. T. Co.*, 160 N. Y. 494; *Delaney* v. *McCormack*, 88 N. Y. 174; *Teed* v. *Morton*, 60 N. Y. 506.) Consequently, it is urged that the distributees of incomes and also the ultimate distributees of principal of the fund which shall result from the sale directed to be had on the death of John C. Thompson are those who, at the time of distribution, shall be found to fall within the description of the will of the beneficiaries intended. (*Matter of Baer*, 147 N. Y. 348; *Clark* v. *Cammann*, 160 N. Y. 323; *Matter of Crane*, 164 N. Y. 71.)

Landon, J. The testator died in the city of New York in 1874, without descendants. The controversy in both actions

arises because of the death of Stephen Jay Thompson in 1897, of full age, without widow or issue surviving him, leaving a will which has been duly probated, by which he gave all his property to his mother, the Josephine L. Thompson mentioned in the third article of William D. Thompson's will. Josephine L. Thompson is still living. William D. Thompson, Jr., died in 1875, leaving issue of himself and Josephine, his wife, the said Stephen Jay Thompson, and daughters, Nina and Marie, now living, all of whom were living at the testator's death. Stephen Jay Thompson was one of the unnamed grandnephews of the testator mentioned in the ninth article of the will. It is obvious that if Stephen Jay Thompson took a vested estate under the will in the income which accrued after his death which was not divested by his death in the lifetime of his mother, that estate passed to his mother under his will. The judgment of the Special Term was that it did so pass. But if he took no vested estate under the testator's will, or if he had a vested estate under it subject to be divested and defeated, if he should die in her lifetime, then it was divested by his death, and no part of it passed under his will to his mother, the plaintiff. And so the Appellate Division held.

The testator by the third article of his will first made a disposition of the income of the *corpus* of the fund during the lives of William D. and Josephine L. Thompson, and of the survivor of them, giving a part to William D., the whole residue to Josephine, for her use and the support of their children during their minority, and directed that as each child should attain majority, he or she should be entitled to receive one equal share of such surplus, "the same being divided into as many equal shares as there shall be children," and one more share for their mother; increasing the shares of Josephine and the children if William D. should die in Josephine's lifetime. William D. died soon after the testator, and Josephine is still living and has not remarried.

We shall first ascertain whether the share of the income which Stephen J. was to be entitled to after his majority was

given to him for the full balance of the trust term, so that what has accrued since his death, and will accrue during the lifetime of his mother, passed under his will to her, or terminated with his death. This depends upon whether the testator so framed his gift or intended to frame it as to continue to the estate of any child the gifts of income to such child after its death during the existence of the trust estate. We think he did not. The children were infants, and living at the testator's death. The testator gives no part of the income to the children during their minority. After directing his trustees "out of the net income to apply to the use of my nephew William D. Thompson, Jr.," the annual sum of $700 during his life; "and the whole residue of such net income to apply to the use of Josephine, the wife of said William D. Thompson, Jr., and their children, by paying the same to her for the support of herself and her children during their minority," he proceeds, "and as each child attains the age of twenty-one, he or she shall be entitled to receive one equal share of such surplus of income above $700 per annum, the same being divided into as many equal shares as there shall be children of the said William D. Thompson, Jr., and Josephine, his wife, and one more share for the said Josephine, which she shall be entitled to receive for her own use during her own life, after the said children shall have attained the age of twenty-one." The testator does not name or number the children; he makes no gift of income to them except by saying that as each attains the age of twenty-one he or she shall be entitled to receive one equal share. All the children living at the death of the testator might die before majority, and the afterborn, if any, ultimately take it; the share of each child is to be adjusted as each attains majority, thus requiring successive readjustments to maintain the required equality, and thus implying that the number making the divisor may change by birth or death after one child attains majority and before the other reaches it. If the share of the living child should, after his death, be allotted to his estate, then the share of the child thereafter

attaining majority would not be adjusted upon the basis of " as many equal shares as there shall be children," when such child attains majority. This was future income; it was no part of his estate at his death. It might be twenty-one years or more after his death before his trustees would receive it. The intervening trust is a proper and necessary provision to enable the children to receive it in its allotted variable proportions, and, therefore, the trustees held the title, and the children could only enforce the execution of the trust as to the income. The title of the trustees extends beyond the life of the deceased child, and their duty to pay to the children in " as many equal shares as there shall be children " continues. It is true that he made no express gift of this income over to the surviving children in case of the death of any child after attaining majority. But why should he? He intended that both the parents and their living children should be provided for, not out of his personal estate, but out of its future income, during the lifetime of the longest liver of the parents, and his purpose is manifest that if any should die the share of the living should thereby be increased as it should be diminished if more should be born. True he did provide with respect to the income to be applied under the ninth article to the use of his grandnieces and grandnephews that the issue of any deceased should take their parents' share. But in that case he gave a life estate first to his nephew John B. Thompson for his life, and upon his death the income for the further life of John C., son of the first taker. The suspension is for the lives of both father and son, that is, for two generations, while under the third article the ultimate estates in the *corpus* are suspended for the lives of husband and wife, and thus practically for only one generation. Besides, the ultimate legatees under the ninth article embrace the children mentioned in the third article, and others. It was natural that he should think that some of the more numerous and longer delayed class under the ninth article would die during the intermediate life estates, leaving issue to be provided for, while the same condition might seem

less likely to occur under the third article. All the conditions present to his mind, and all which have since occurred under the third article, could be satisfied by terminating the allotment of income to any child upon its death during the existence of the trust. This annual gift of shares of the net income to the children, though not in strictness an annuity, like the $700 per year given to their father, has some resemblance to it, because it is net and not gross income, and, therefore, exempt from deduction for taxes or charges. (*Whitson* v. *Whitson*, 53 N. Y. 479.) An annuity is a yearly payment of a certain sum of money granted to another in fee for life or years. (*Kearney* v. *Cruikshank*, 117 N. Y. 95.) Its duration is dependent upon the construction of the instrument by which it is created, and is for life, unless a different intention is manifest. (Am. & Eng. Ency. Law, title Annuities.) This resemblance is not decisive, but is persuasive of the like construction so far as the reason for it is the same.

The provision for the final disposition of the *corpus* of the fund confirms the construction already given, for if the gift of the *corpus* was defeated by Stephen Jay Thompson's death, the gift of income to him could hardly be presumed to continue after the gift of the *corpus* had failed, since the first gift of a part of the incident was anticipatory of the final gift of the principal, and if the *corpus* failed, it is improbable that it was intended that its partial fruits should survive. The provision for final distribution is :

"Upon the death of the longest liver of them, the said William D. Thompson, Junior, and Josephine, his wife, this trust shall cease, and the trustees shall forthwith transfer and pay over the whole of the trust property and the proceeds and increase thereof to the children of the said William D. Thompson, Junior, and Josephine, his wife, and if any of said children shall have died leaving issue, such issue shall receive their parent's share."

There is no other disposition of the *corpus* except in this direction to "transfer and pay over" the same upon the termination of the trust. It is to be paid to the children of Wil-

liam D. and Josephine, and the issue of any of such children as shall have died leaving issue, and to no others. No representative or legatee of any such deceased child is to take his or her share. It may be conceded that the gift over to the issue of such deceased child as leaves issue is not necessarily the exclusion of such deceased child as leaves no issue, but it will appear, we think, that the scheme and intent of the will exclude a child who " shall have died " leaving no issue.

The testator intends to provide for the support of William D. Thompson, Jr., his wife and their living children, be the latter " as many as there shall be," during the parents' life, and " upon the death of the longest liver " of the parents to transfer and pay over the *corpus* to such of their children as shall not have died during the existence of the trust estate, and to the issue of such as shall have died leaving issue. This he directs to be transferred and paid over to a class which he can describe, but whose members he cannot name or number, but who can be named and numbered upon the termination of the trust estate, when the transfer and payment over are directed to be made. The phrase " If any of said children shall have died leaving issue," standing alone, means a death during the existence of the trust, and thus after the death of the testator, and this meaning is emphasized by the provisions already considered respecting the income.

It is true that the law favors the vesting of legacies as early as possible, but it does so to avoid perpetuities, intestacy, illegal suspension of the power of alienation, and to effect an intent which might otherwise be defeated. But when the intent is clearly otherwise and not violative of any statutory restriction, it must prevail. The intention is the paramount rule of construction. Most of the other rules are aids to the discovery of the testator's intention, or to the application of it. One of the subordinate rules is that when the only gift is found in the direction to pay or distribute at a future time, the gift is future and not immediate; contingent, but not vested. Its reason is plain ; the direction has no reference to the present, and can be executed only in the future, and if in the meantime

the donee indicated shall die, the direction cannot be executed at all. If the testator should say, "I give to be delivered later," or use equivalent words, the delivery only is postponed. The gift is complete at the testator's death, and if the donee shall die before delivery, delivery can be made to his representative or assignee. Of course, if there is in other parts of the will an indication of an intent to make a present gift, the indication which the rule as to a direction for future delivery supposes is weakened, and the rule itself yields to clearer evidence of the contrary intent. In many reported cases the search for clearer evidence has resulted in finding it, sometimes in single expressions and sometimes in the collective phrases of the will. (*Goebel* v. *Wolf*, 113 N. Y. 405; *Matter of Young*, 145 ib. 535; *Bowditch* v. *Ayrault*, 138 ib. 222; *Matter of Brown*, 154 ib. 324; *Loder* v. *Hatfield*, 71 ib. 92; *Bushnell* v. *Carpenter*, 92 ib. 270; *Matter of Tienken*, 131 ib. 391.) In the case last cited Judge Finch said, "I have observed in general that where it (the rule) has prevailed, it has been where no contrary intention was fairly ndicated, and where its own force was somewhat strengthened and its indications corroborated by further facts." A just remark. If the income intended for Stephen Jay Thompson had been the precise income of the share of the *corpus* intended for him, that would have been an indication of a vested gift of both. In *Warner* v. *Durant* (76 N. Y. 133), out of a fund of $275,000 bequeathed to the executors in trust, they were directed to pay the interest to Oliver Blush for five years, and then to pay him the principal. Blush died during the five years. It was held that the legacy did not lapse because the entire fund of $15,000 was severed from the estate for the benefit of the legatee, and the indication was clear that as no one else had any share of it, or of its income, he was given it all at the death of the testator.

It has been often said that it is against public policy to restrain a man in the use or disposition of his property in which no one has an interest but himself. (Gray on Perpetuities, 76.) But in this case Stephen's share of the income was less than

the income of his ultimate share in the *corpus*. In *Smith* v. *Edwards* (88 N. Y. 92) the court explored the will in vain to take legacies given only by a direction for future payment to four children and four grandchildren named in the will out of the operation of the rule. The court sought for words of gift in addition to the direction to pay over, and found none ; it tested the gift by the exception in *Warner's Case* (*supra*), but as the whole income of a share was not given to the donee of the share that exception afforded no help. The will provided that in case any legatee should die before final distribution, his " share " or " portion " should go to his issue; or in default thereof to the survivors. It was urged that the word " share " or " portion " indicated a gift already made. The court said, not so, for the testator intended to give it over in such event ; besides, the words " share " and " portion " are equivocal, and may mean immediate gifts, or be merely descriptive of gifts to be made in the future. (See, also, *Delaney* v. *McCormack*, 88 N. Y. 174; *Vincent* v. *Newhouse*, 83 ib. 505; *Teed* v. *Morton*, 60 ib. 506 ; *Clark* v. *Cammann*, 160 ib. 315 ; *Dela-field* v. *Shipman*, 103 ib. 463; *Hobson* v. *Hale*, 95 ib. 588.) In *Matter of Crane* (164 N. Y. 71) the rule controlled the decision. In that case Chief Judge Parker, after stating the rule and the further one, namely, where the gift is of money and the direction to convert the estate is absolute, the legacy given to a class of persons vests in those who answer the description and are capable of taking at the *time* of the distri-bution, instanced the exception recognized by the cases, " If the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator, and the class of legatees is to be determined as of that date, for futurity is not annexed to the substance of the gift." The reason for the rule is that where it is plain that the testator intended successive gifts to persons named by him, or ascertainable at the time of his death, the last gift is just as direct as the first. In determin-ing whether the future gift to a class is postponed to let in the intermediate estate, or in order ultimately to bestow the

*corpus* or remainder upon persons who shall then be living to enjoy it, and cannot be ascertained at the testator's death, the testator's intention is as decisive as it is in other questions of construction. If the postponement is simply for the benefit or convenience of the estate, that indicates that the gift itself is not intended to be postponed, but that it is not presently payable, and it will be more convenient to pay it after an intermediate or trust estate has expired. (*Robert* v. *Corning*, 89 N. Y. 225.) But if it is postponed for the benefit of a legatee as if he is an infant, and payment is to be made to him at his majority, then the gift is future and conditional. (*Sweet* v. *Chase*, 2 N. Y. 75.)

It is obvious that when there is a direction to pay to a class of children after their parents shall have completed their enjoyment of it for life, and the children are deprived of their parents' care, it is a strong indication of an intent to postpone for the benefit of the children, and also in order to ascertain who survive to need it. There is no indication here that the estate was to be benefited by the postponement, or its convenience further promoted by it than to facilitate the intermediate partition and application of the income, and the indications are strong that the postponement was both for the benefit of the children and to find out to whom and to how many, the direction to transfer and pay over could be made on the appointed day. That the testator did not intend that any share should in any event be withheld from the *corpus* to be finally distributed under the third article seems to be clear.

The appellants invoke the statute which declares that future estates are vested " when there is a person in being, who would have an immediate right to the possession of the lands, (here personal property) upon the ceasing of the intermediate or precedent estate. They are contingent, whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain." (1 R. S. 723, sec. 13; Real Property Law, ch. 547, L. 1896.) If we construe the second clause of this statute apart from the first, it is not difficult to show that the gift was contingent, for although when the testator died it

was certain that Josephine L. Thompson would die, yet it was uncertain whether Stephen Jay Thompson would survive her, and thus the event was uncertain upon which the *corpus* was limited to him, and it remained uncertain all of his life, and also during his life the person to whom was given the share he would take if he should survive his mother, remained uncertain, and, therefore, was contingent. (*Hennessy* v. *Patterson*, 85 N. Y. 91; *McGillis* v. *McGillis*, 154 ib. 532; *Purdy* v. *Hayt*, 92 ib. 446.)

But we must also consider the first clause of the statute. It is true that at any time during Stephen Jay's life he would have had an immediate right to the possession of a share upon the then ceasing of the precedent estate.

*Moore* v. *Littel* (41 N. Y. 66) is a leading authority, although it has been criticised upon common-law lines. It is to the effect that a remainder limited to the heirs of A upon the determination of a life estate in A is vested in his lifetime in his living children, although — and this is the point of the criticism — A's heirs cannot be ascertained until his death. But the case also holds that the death of any child in his father's lifetime defeats his interest and divests the remainder, the effect of the statute being to abolish the common-law condition precedent to the vesting of the remainder, namely, the child's survivorship of his father, and to substitute for it a condition subsequent, which may divest and defeat the remainder after it is vested, namely, the child's death in his father's lifetime.

It was held in subsequent cases founded upon the same title that the deed of a child who predeceased his father conveyed no part of the remainder. (*Jackson* v. *Littell*, 56 N. Y. 108; *House* v. *McCormick*, 57 ib. 310; *House* v. *Jackson*, 50 ib. 161.) Thus a remainder vests subject to be divested if such is its tenure; and the condition subsequently occurring upon which the divesting depends the remainder is thereby divested. The same rule must be applicable to future limitations of personal property, especially when the property is held in trust to await the result of conditions subsequent. The result is

the same in this case whether the gift of income and of *corpus* failed because contingently given to Stephen Jay Thompson, or given upon a tenure subject to be defeated by his death during the existence of the trust. In either event he took nothing which passed under his will.

· What has been said assists in the construction of the ninth article of the will. It presents less difficulty as to the income since there is an explict direction that the issue of any deceased grandnephew or grandniece shall be admitted to the class among whose members final distribution is directed to be made. The testator gave by words of present gift the lot No. 139 Broadway in the city of New York to another nephew, John B. Thompson, for life This nephew survived the testator, and died in 1886. · The will gave upon his death the same property to his executors upon trust to receive the income during the life of John C. Thompson, son of John B., and apply one-quarter to the use of John C., another quarter to the use of his mother, the wife of John B., unless she should die or remarry during said term (John C. and his mother are still living), and to apply the other half during John C.'s life to the use of all the other grandnieces and grandnephews of the testator, "the issue of any deceased taking their parents' share," and "upon the death of the said John C. Thompson, to sell and convey the said property in fee, and to distribute the proceeds among all my grandnieces and grandnephews in equal shares, the issue of any deceased grandnephew or grandniece taking their parents' share."

Eight grandnephews and nieces, including Stephen Jay Thompson and John C. Thompson, were living at the testator's death; two have been born since. Stephen Jay Thompson survived John B. Thompson, the first taker. We think the testator intended that the one-half of the entire income accruing after the death of John B. Thompson and until the death of John C. Thompson should be applied during that period to the use of all his living grandnieces and grandnephews, excluding John C. Thompson, and substituting in the class in place of the parent the issue of any deceased whenever before

the end of the trust term any parent in the class should die leaving issue, whether such decease should occur in the testator's lifetime or at any time afterwards up to the date of the final distribution of the *corpus*. He did not intend to substitute the estate of a deceased nephew leaving no issue in the class in the place of such deceased, and he did not intend to permit to be withdrawn from the entire one-half of the income to be thus applied any part of it for the benefit of such substituted estate. He intended the class to be composed of the living grandnephews and grandnieces, and the issue of any deceased. He would not exclude the issue of those that might die in his lifetime, and thus discriminate against them, nor exclude such grandnephews and grandnieces as might be born after his death before the date of final distribution, and thus discriminate against them. He did not intend to give any part of the *corpus* of the estate to any deceased grandnephew not living to share in the final distribution, but did intend its distribution among the survivors and the issue of any deceased.

The judgments of the Appellate Division in both actions should be affirmed, with costs to both parties out of the *corpus* of the estate.

O'BRIEN, J. (dissenting). This appeal is the result of two separate actions between substantially the same parties, the purpose of which was to procure a judicial construction of the third and ninth clauses of the will of William D. Thompson, who died on the twenty seventh day of June, 1874. One of the actions relates to the third paragraph of the will and the other to the ninth paragraph. There is no dispute concerning the facts, and the question presented by the appeal is substantially whether the remainders of the two separate trusts provided for in these two clauses of the will vested in the ultimate beneficiaries upon the death of the testator or were contingent and vested only at the death of the life tenants designated in the trust provisions.

By the third paragraph of the will the testator devised and

bequeathed to his executors one share of the estate, amount-
ing at par to one hundred thousand dollars, upon the trust and
uses following, that is to say, to collect and receive the inter-
est and dividends thereon for his benefit and out of the net
income to apply to the use of his nephew, William D. Thomp-
son, Jr., the annual sum of seven hundred dollars, to be
reckoned from the time of his death, payable half-yearly
during his life, and the whole residue of such net income to
apply to the use of Josephine, the wife of said William D.
Thompson, Jr., and their children, to pay the same to her for
the support of herself and children during their minority, and
as each child attained the age of twenty-one years, he or she
should be entitled to receive a one equal share of such surplus
or income above seven hundred dollars per annum, the same
being divided into as many equal shares as there shall be chil-
dren of the said William D. Thompson and Josephine, his
wife, and one more share for the said Josephine, which she
shall be entitled to receive for her own use during her life
after all the children shall have attained the age of twenty-
one.   In case of the death of the said William D. Thompson
during the life of his wife, the portion of the income set
apart for him is to be added to the other shares in equal pro-
portion.   Upon the death of the longest liver of them, the
said William D. Thompson and Josephine, his wife, this trust
shall cease, and the trustees shall forthwith transfer and pay
over the whole of the trust property, and the proceeds and
increase thereof, to the children of the said William D.
Thompson and Josephine, his wife, and if any of such chil-
dren shall have died leaving issue, such issue shall receive
their parent's share.

The ninth clause of the will provided that after " the fore-
going bequests being first duly provided for and not otherwise,
I give to my nephew, John B. Thompson, for his life," a cer-
tain piece of real estate in the city of New York; " and upon
his death I give and devise the same to my said executors, their
successors and assigns, upon trust to receive the income thereof
during the life of John C. Thompson, son of the said John B.

Thompson, and apply the same as follows : One-quarter to the use of said John C. Thompson and one-quarter to the use of his mother, the wife of said John B. Thompson ; and if she die or remarry within said term, then from that time to apply the entire half of said income to the use of the said John C. Thompson and the other half to apply during the whole of said term to the use of all the other grandnieces and grandnephews of mine in equal shares, the issue of any deceased taking their parent's share, and, upon the death of the said John C. Thompson, to sell and convey the said property in fee, and to distribute the proceeds among all my grandnieces and grandnephews in equal shares, the issue of any deceased grand-nephew or grandniece taking their parent's share." It appears that one of the grandnephews mentioned in this clause, that is to say, Stephen Jay Thompson, died on the twenty-seventh day of April, 1897. He was a son of William D. Thompson, the nephew mentioned in the third clause of the will, and who died about a year after the death of the testator. Josephine L. Thompson, his wife, survived him and is still living. It will be seen that Stephen Jay Thompson, a grandnephew, was a beneficiary under both paragraphs of the will. He left no issue surviving, but left a last will and testament, which was duly admitted to probate, by which he gave all his property to his mother, the defendant Josephine L. Thompson, to whom letters of administration with the will annexed were issued. If the interest of Stephen Jay Thompson, deceased, vested upon the death of the testator, then that interest in the trust fund, created by these two clauses of the will, vested in his mother Josephine, and she is entitled to receive the income accrued and to accrue upon his share of the estate of the testator under the trusts created by these clauses of the will.

On the other hand, the two sisters of Stephen Jay Thompson, who survived him and are parties to this action, claim that the interests were not vested but contingent upon the surviving of Stephen until the termination of the trusts, and that the right to receive the income on his share passed upon

his death to the remaining beneficiaries under those para-
graphs of the will.     Other parties to the action claim that
upon the death of Stephen his interest lapsed and passed to
them as a part of the residuary estate under the residuary
clause of the will.     The court at Special Term held that the
remainders vested upon the death of the testator, and that
Josephine, the mother of Stephen, took the share of her son
in the trust estate.     Upon appeal this judgment was modified,
and by a divided court it was held that the interest of Stephen
was contingent upon his surviving the period of the trust, and
that since he died, before the trust terminated, his interest
passed to the sisters.     There is no substantial difference that I
can perceive between the trust provision in the third clause
and that in the ninth clause so far as concerns the question of
the vesting of the remainders.     If the remainders vested under
the third clause, they also vested under the ninth clause.

The legal character of an estate in remainder, whether
vested or contingent, depends upon the language of the instru-
ment transmitting the estate, and the intention of the testator
in that regard to be derived from the language and the sur-
rounding circumstances.     The question involved in this appeal
must be solved upon principle as well as precedent, since it is
perhaps true that the adjudged cases are not all in harmony.
Any apparent conflict, however, would doubtless disappear
upon a careful scrutiny of the provisions of the will in each
particular case, and inasmuch as there is always some differ-
ence in the language of the instrument, the general purpose
of the testator is found in the expressions employed.     It is not
surprising that upon a superficial examination there would
seem to be some conflict in the authorities.     But there are
some general principles and rules of construction which have
long been recognized and sanctioned by the courts that will
enable us to solve the question involved in this appeal.     A
remainder is not to be considered as contingent in any case
where it may fairly be construed to be vested, since the law
favors the vesting of estates.     The adverbs of time, therefore,
such as *when, then, after, from,* etc., in a devise of a remainder

limited upon a life estate, are construed to relate merely to the time of the enjoyment of the estate and not to the time of its vesting in interest. The law favors such a construction of a will as will avoid the disinheritance of remaindermen who may happen to die before the determination of the precedent estate. (*Moore* v. *Lyons*, 25 Wend. 119 ; *Sage* v. *Wheeler*, 3 App. Div. 38 ; *Matter of Brown*, 93 N. Y. 295 ; *Bowditch* v. *Ayrault*, 138 N. Y. 222 ; *Matter of Tienken*, 131 N. Y. 391 ; *Goebel* v. *Wolf*, 113 N. Y. 405 ; *Matter of Young*, 145 N. Y. 535 ; *Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125 ; *Corse* v. *Chapman*, 153 N. Y. 466 ; *Hersee* v. *Simpson*, 154 N. Y. 496 ; *Goodwin* v. *Coddington*, 154 N. Y. 283 ; *Matter of Brown*, 154 N. Y. 313 ; *Connelly* v. *O'Brien*, 166 N. Y. 406.) In some recent cases where the only words importing a gift of the remainder are found in a direction to divide or to pay over at a future time, it has been said that the gift is future and not immediate, that it is contingent and not vested. These cases rest upon the language and the provisions of the will, and where no words of gift are found except a direction to divide or pay at a future day, the vesting is postponed to the time of distribution. (*Matter of Crane*, 164 N. Y. 71 ; *Clark* v. *Cammann*, 160 N. Y. 323.) But that rule applies only in exceptional cases and not to a case like this where it is apparent from the whole will that the testator intended to vest the remainders in the grandnephews and grandnieces upon his death. The will in the case at bar when read as a whole contains words of gift to the remaindermen, and, therefore, the interest of the grandnephews and grandnieces was not contingent under the rule which applies in cases where there is only a simple direction to divide or pay over at a future time.

It will be seen that by the terms of the will Stephen Jay Thompson, the grandnephew who died and whose share is the subject of this controversy, took an interest in the trust fund on the death of the testator and was entitled to share in a part of the income during his minority and in another and larger part after arriving at full age in case of the death of his father

in the meantime. There was given to the remaindermen the immediate enjoyment of their share of the income. That right vested upon the testator's death and it was the enjoyment by the ultimate beneficiaries of the *corpus* of the trust fund that was postponed. But it was the intention of the testator to vest the title to the remainders in the grandnephews and grandnieces then living and any others that were born after his death. There was no period of time subsequent to the testator's death that the remaindermen living did not have an interest in the income and the right of enjoyment, and their title and right to the *corpus* vested at the same time that their right to the income vested. The right of enjoyment of the income was immediate, that of the *corpus* postponed to a future day, but the ultimate right was vested at the moment that the will became operative. The testator in effect declared that the fund should ultimately be paid to his grandnephew and grandnieces then living and such as might thereafter be born, and he did not intend to disinherit any one of them who happened to die before the termination of the trust. If these propositions are correct, then it is obvious that Stephen Jay Thompson had an interest in the *corpus* of the trusts which passed to his mother under his will. This case is clearly distinguishable, therefore, from those cited, where the only words of gift were contained in a direction to pay over or distribute at a future day. Here there was a present gift of the intermediate income, or a part of it, to the remaindermen, which indicates very clearly an intention to vest the *corpus* from which the income was to be derived. (*Robert* v. *Corning*, 89 N. Y. 240, 241; *Goebel* v. *Wolf*, *supra*.) All future estates are vested when there is a person in being who would have an immediate right to the possession and enjoyment upon the termination of the intermediate precedent estate. The language of the dispositions contained in the two clauses of this will now in question bring the case within this definition, and there is nothing in the other provisions of the instrument to limit or qualify the legal effect or to disclose any intention to postpone the vesting to some future

time, since the testator evidently intended that the children of his nephews should take the *corpus* as well as their share of the income subject to no other contingency than the birth of other children who were to be let in, but that event did not happen. Upon the termination of the trust by the death of the life tenant, Stephen and his sisters would be entitled to the possession and enjoyment of the estate in remainder, and hence their interests were vested.

The third clause of the will seems to me to be so clear as scarcely to require construction. The testator there employed language that leaves no doubt with respect to his intentions. He disposed of a fund of one hundred thousand dollars in trust for the sole benefit of his nephew, his nephew's wife and their children. He directed that during the life of the longest liver, husband or wife, as the case might be, the income alone should be paid in certain proportions to his nephew, his wife and their children, and at the death of the longest liver, husband or wife, the trust should cease and the children should thereupon become entitled to the *corpus*. The fact that he directed the trustees to deliver or pay over to these children the *corpus* at the termination of the trust is, under such circumstances, of no consequence. That was only a method of making the gift in remainder. The material and important thing is that beyond all question the testator intended that the children should have the fund when the trust ceased. It has not yet terminated, since Josephine, the nephew's wife, is still alive. The nephew had three children at the death of the testator, and the latter knew them all and designated them as the ultimate objects of his bounty. There was no contingency between the death of the testator and the termination of the trust to prevent the remainders from vesting in the living children of the nephew that the testator knew during his life and that were to receive the gift. Certainly the possibility of the birth of other children to the nephew and his wife before the termination of the trust was not such a contingency. That event could only affect the quantity but not the quality of the

remainders.    There was, of course, the possibility of the death of one or all the children before the termination of the trust, but that circumstance did not prevent the remainders from vesting at the testator's death.    I am not aware of any principle or rule of law that recognizes either of these circumstances as sufficient to defeat the vesting of the remainders or to make them contingent.    But it is said that when the testator gave the *corpus* to the children of his nephew it was a gift to a class, and only the members of the class that survived the trust were intended or included in the word children, and that if one of them died before the termination of the trust, an event which actually happened in this case, he could take no part of the capital of the fund.    With all respect I am constrained to say that this seems to me to be a plain perversion of the purpose that the testator had in view.    His nephew had three children living at the death of the testator, which the latter knew and intended to provide for by giving them the entire fund in remainder on the termination of the trust in case no other children were subsequently born.    The court now holds that he succeeded in giving it to only two of them, since the one who died was by that fact disinherited and took nothing. The trust is still in operation, and, if another child shall die before it terminates, then the testator will succeed in giving the whole fund to only one of the three children that he knew during life and clearly intended should be the recipients of his bounty.    It must follow from this that, if a testator should dispose of all his property to his widow during her life and direct that on her death the same shall be distributed to all his children, the will vests no interest in the estate in any child until the termination of the widow's life estate and then only in such of the children as survive the mother, since any that have died in the meantime are disinherited and their heirs take nothing.    It is needless to say that there can be no distinction in this respect between remainders given to the testator's own children and remainders to the children of his nephew when the gift is given in the same terms.    At the moment of the death of the testator

in this case the principal and income of the fund of one hundred thousand dollars had been completely disposed of. The legal and equitable title and beneficial interest in the whole then vested in some one. No interest or right remained in abeyance. When and in whom did the several interests vest? The answer to that question would seem to be reasonably clear and simple. The legal title, for the purposes of the trust, vested in the trustees. The beneficial interest and right to the income vested in the nephew, his wife and children for the trust period. The capital vested in the three children then living subject to the execution of the trust and subject to open and let in afterborn children. Thus every interest, legal or equitable, in the whole fund, income and *corpus* was completely disposed of and vested upon the testator's death. When Stephen J., the grandnephew, died his mother, under his will, succeeded to all his rights and took his place both with respect to the income and *corpus* of the trust fund. He had an interest in both at the time of his death which he could and did dispose of by his will.

I think that the remainders in the two clauses of the will vested upon the death of the testator, subject to open and let in afterborn children of William D. and Josephine Thompson, and, therefore, the judgment of the Appellate Division should be reversed and that of the Special Term affirmed in each case, with costs to all parties who have appeared or filed briefs upon this appeal payable out of the income of the trust fund.

PARKER, Ch. J., GRAY and WERNER, JJ. (and CULLEN, J., on the authority of *In re Crane,* 164 N. Y. 71), concur with LANDON, J.; HAIGHT, J., concurs with O'BRIEN, J.

Judgments affirmed.