[No. 13817. Department One. March 26, 1917.]

## In the Matter of the Estate of JAMES MORAN.

### MARGARET HYNES et al., Appellants, v. PATRICK MORAN et al., Respondents.[1]

WILLS — INTENTION OF TESTATOR — IDENTITY OF BENEFICIARIES — PAROL EVIDENCE—ADMISSIBILITY. Under the rule that parol testimony is admissible to explain a latent ambiguity in a will, oral evidence of the intent of the testator as to the identity of beneficiaries, described in the will as "my six (second) cousins named Moran and all living in Ireland, I believe," is admissible where it appears that there were different groups of cousins claiming the estate to whom the description applied in different degrees.

SAME—IDENTITY OF BENEFICIARIES—EVIDENCE — SUFFICIENCY. In such a case, the evidence establishes that the testator intended by his will the six children of a second cousin, Michael Moran, deceased, who had befriended the testator before he left Ireland and was a person of consequence, where it appears that Michael had six children born after the testator came to this country, that they were the only group of six cousins named Moran living in Ireland, that the testator could not give their names but said they were people of consequence and referred the scrivener to an acquaintance, one Hynes, who was acquainted with Michael Moran and came from the same village, and who, upon inquiry, had informed the testator that Michael had left a widow and six children named Moran all living near their old home in Ireland.

Appeal from a judgment of the superior court for King county, French J., entered July 28, 1916, in favor of the defendants, decreeing the final distribution of the estate of a decedent, after a hearing before the court. Affirmed.

[1]Reported in 163 Pac. 922.

*Clise & Poe,* for appellants.

*Fred W. Catlett* and *Emmons & Emmons,* for respondents.

Morris, J.—Appeal from a decree of distribution of the estate of James Moran, deceased.

James Moran came to this country from Kilfenora, Ireland, about 1870, and died testate at Seattle, December 29, 1913, leaving him surviving a large number of collateral relatives, who claim his estate either under the will or as next of kin, under a plea that the will was void for uncertainty. Appellants and respondents both claim under the will, which, in so far as it is material to our inquiry, is as follows:

"I give, bequeath and devise to my six (second) cousins named Moran, and all living in Ireland, I believe, all my property, real, personal and mixed, of every kind nature and description, of which I may die seized, for their use, share and share alike, except as I may further herein provide."

The claimants appearing below are classified by counsel into four groups: (1) The respondents, a group of four second cousins once removed, children of Michael and grandchildren of Terence Moran. All of this group were named Moran, and lived in Ireland at the time of the execution of the will. This group originally consisted of six, one of whom died in 1901 and another in 1907. All of this group were born after the testator left Ireland. (2) The appellants, a group consisting originally of seven second cousins, children of Connor, a brother of Terence, and grandchildren of James Moran, who was a brother of the grandfather of deceased. Of this group only two are now living. The members of this group were not all named Moran, nor did they all live in Ireland at the time of testator's departure. The two survivors of this group are females and are married, and were known to the testator by their married and given names before he left Ireland the last time. (3) A group of

six surviving of nine children of John Moran, a deceased brother of appellants. Only two of this group lived in Ireland and only one was named Moran. (4) Three children of the testator's first cousin, all living in Ireland and all named Moran. This group did not claim under the will, but contended the will was void for uncertainty and that they were entitled to the estate as next of kin. The lower court found in favor of group number one. Group number two has appealed. Groups three and four have abided by the judgment below and do not appear in this court.

We will first address ourselves to the assignments of error arising in law. They may be united in one urging error in the admission of oral testimony taken by deposition in Ireland and the testimony of two witnesses produced at the trial. It may be set down as well established that parol evidence is not admissible to vary, add to, or contradict the terms of a will; first, because the will is a written instrument, and as such, like all other written instruments, is the best evidence of its patent intent; second, because wills are by statute required to be in writing. This rule, however, is no stronger than its equally well founded exception that parol evidence is admissible to explain a latent ambiguity in any written instrument. This exception has been applied with much force to the language of wills when a latent ambiguity appears, as where the description of devisees or legatees is answered by two or more persons, parol evidence has always been admitted to show the person or persons intended, or where the beneficiary named in the will is not stated with precision, parol evidence is admissible to show the person intended to be described. This upon the theory that, in construing a will, the object of the courts is to ascertain the intention of the testator as that intention is expressed in the words used. *Reformed Presbyterian Church v. McMillan*, 31 Wash. 643, 72 Pac. 502; *Rathjens v. Merrill*, 38 Wash. 442, 80 Pac. 754; *Siegley v. Simpson*, 73 Wash. 69, 131 Pac. 479, 47 L. R. A. (N. S.) 514. It appearing that

the descriptive terms of the will fit different persons in different degrees, it was proper to admit oral testimony to ascertain, if possible, the expressed intention of the testator in order to give full effect to that intention.

The beneficiaries in this will are described (1) as six in number, (2) as second cousins, (3) as named Moran, (4) as living in Ireland. To the attorney (not now of counsel on either side) who drew the will and who asked for a more definite description of the persons intended, the testator added, according to the best recollection of the attorney, (5) that the names could be obtained from a Mr. Hynes of Ballard. This attorney then testified he had no opportunity to interview Hynes because he was advised that the testator was *in extremis*, which subsequently proved to be true, as the testator died the next day, and (6) they were prominent and well to do and no trouble would be had in locating them.

Employing these aids in determining the expressed intention of the testator, we reach the same conclusion as the trial court that respondents represent the only group known to the testator who conform to the description in the will. The only misfit in the description as applied to respondents is that, strictly speaking, they are not second cousins, but children of a second cousin, or second cousins once removed. It will be noted, however, that the word "second" appears in parenthesis. This is thus explained by the attorney drawing the will: "I said, 'Six cousins is a pretty indefinite way of describing people who are to take your property. Are these your first, second or third cousins, or what grade are they so that I can put them in more definitely?' He then said, 'They are my second cousins,' and I put in here as you see in parenthesis the word 'second.' " It would hardly be anticipated that the testator, a man of limited education, could correctly and technically place all his numerous relatives in their true legal relation to him. The evidence shows that the testator well knew Terence Moran, the grandfather, and Michael, the father of respondents; that he had

received many kindnesses from Terence when he was a boy; that, through the recommendation of Terence, he had obtained a valuable position which enabled him to accumulate sufficient money with which to make his way to this country, and that Terence further assisted him by giving him letters of recommendation to carry with him. It was further disclosed that, after becoming acquainted with Hynes and learning he was from the same village in Ireland, testator made inquiries concerning the descendants of Terence and was told that Michael, whom testator knew as a boy, was dead, leaving a widow and six children; that these children were living in Ireland near the old home and that they all bore the name of Moran. Michael, their father, was, in his lifetime, a man of some prominence, held elective public office, and was president of the United Irish League. Two of his sons at one time were members of the rural district council. One of them, for many years, had been secretary of the United Irish League, and had been connected with many public organizations for many years. These facts would seem to fit the fifth and sixth descriptions, that the names of the persons intended to be described could be obtained from Hynes of Ballard and that they were prominent and well to do people. The appellants fit the description only in being second cousins. They are the only survivors of their original group and are old ladies, seventy-one and eighty years of age. Their names are not Moran. They are of no prominence in their community. It is quite clear that the testator knew these old ladies before he left Ireland the last time and knew their names were not Moran. We think it is established that he knew any others of this group living, at the time of the making of the will, did not live in Ireland. Save for the fact that they are second cousins once removed, the respondents answer and fit every description in the will, and every description given the attorney who drew it for the purpose of locating the beneficiaries intended. The appellants fit no description save that they are surviving

second cousins.   The lower court, after hearing the testimony and reading depositions, made these observations: "The six children of Michael are the only ones that I can pick out that seem to conform to the terms of the will.   If he does not refer to the six children of Michael, the will is absolutely void for uncertainty, but I think, from the parol evidence and the depositions, that these are the six persons he meant to name in his will."   We reach the same conclusion. In our opinion, it is the only one possible from this record.

Judgment affirmed.

ELLIS, C. J., CHADWICK, MAIN, and WEBSTER, JJ., concur.