[No. 18430.  *En Banc.*  June 25, 1924.]

HENRY H. SHUFELDT, *Plaintiff and Respondent,* v.
WILLIAM B. E. SHUFELDT, *Defendant and Appellant,*
B. G. EDGERTON *et al., Defendants and Respond-
ents,* HENRY W. HUGHES *et al., Cross-
Complainants and Respondents.*[1]

WILLS (59)—CONSTRUCTION—INTENT OF TESTATOR. The intent of
the testator, if it can be gathered from the terms of the will, is the
controlling consideration in its construction.

SAME (66)—CONSTRUCTION—EXTRINSIC FACTS AND CIRCUMSTANCES.
In arriving at the intention of the testator as to the vesting of a
legacy, consideration may be given to the fact that the legatee was
a member of his family to whom he felt friendly and who was made
a trustee and executor.

SAME (70)—CONSTRUCTION—ESTATES CREATED—TIME OF VESTING.
In a will bequeathing income for life, and providing that, if the
legatee die without issue, "then the trustees shall convey" to an-
other, "then" relates to the time of enjoyment and not to the time
when the interest vests.

SAME (70)—CONSTRUCTION—VESTED REMAINDER. The law favors
the early vesting of estates, and such construction is to be invoked
to create a vested remainder, which will not be considered contin-
gent in any case where, consistently with the testator's intention,
it may be considered vested, even in doubtful cases.

SAME (70). Where a remainder to H. was contingent while it
remained uncertain whether his wife would leave issue, upon his
wife's dying without issue, the contingency was removed and the re-
mainder vested in H. at that time.

SAME (70). A remainder is deemed to have vested at the death
of the testator where the devise or its enjoyment was postponed only

[1]Reported in 227 Pac. 6.

for letting in intermediate estates, since no futurity is annexed to the substance of the conveyance, but only to its enjoyment.

SAME (60, 70)—CONSTRUCTION—IN FAVOR OF HEIRS—VESTED REMAINDER. Under a will appointing trustees to hold and distribute an estate, and only directing a certain legacy or devise to be paid at a future time without any gift independently of such direction, the "divide and pay" rule, requiring that the time of payment be annexed to the legacy itself and that heirs would not take if the legatee died before the time of payment, is not to be applied to create a contingent remainder, where the devise was implied from a direction to the trustees to convey an undivided one-half of certain lots to H. "to him and his heirs forever," and where the futurity was not annexed to the substance of the gift; and in such case the will shows an evident intent to devise a vested remainder, that descended to his heirs, though the devisee died prior to the time of the conveyance, under the rule of construction favoring or requiring the vesting of devises whenever possible.

SAME (70) — CONSTRUCTION — VESTED REMAINDER — RULE IN SHELLEY'S CASE. In such a case, the vesting of the remainder is not affected by the rule in Shelley's case, which is, if an estate for life is granted and the remainder is limited by the same instrument to the heirs of the life tenant, the life tenant takes the remainder as well as the life estate (MACKINTOSH, J., dissents).

Appeal from a judgment of the superior court for King county, Honorable Harold Preston, judge *pro tempore,* entered December 10, 1923, in favor of the cross-complainants, in an action for partition, tried to the court. Affirmed.

*Butler, Lamb, Foster & Pope, Shorett, McLaren & Shorett,* and *Edward R. Taylor,* for appellant.

*Revelle, Revelle & Kells,* for respondent.

*Poe, Falknor, Falknor & Emory,* for respondents and cross-complainants.

HOLCOMB, J.—Henry Shufeldt, a resident of Wisconsin, on November 28, 1900, made a will disposing of a considerable estate and containing many provisions, all with the exception of the one involved in this litigation looking to the benefit of only his wife, children,

grandchildren, sisters and two widows of deceased brothers. The will first provides for a number of specific legacies, then gives to the testator's wife a life estate in the residue, and, coming to the property concerned in this appeal, bequeathes the Hotel Butler property, situated in Seattle, in trust to his son, William B. E. Shufeldt, appellant, and his son-in-law, Edwin Hughes, for certain purposes which may be thus summarized; that, during the lifetime of his wife, Emeline M. Shufeldt, the trustees were to pay to her the net income from the Butler Hotel, and after her decease the trustees were to pay one-half of the net income to the testator's daughter, Emeline Shufeldt Hughes, wife of the trustee Edwin Hughes, during her lifetime; that, upon her death, if she left surviving her any issue, this one-half net income should be used for the benefit of such issue during its minority, and upon such issue attaining majority, the title to one-half of the property was to be conveyed by the trustees in fee to such issue; but if the daughter, Emeline S. Hughes, died leaving no issue surviving her,

"then the said trustees or their successors shall convey said undivided one-half of said lots and blocks as follows: To Edwin Hughes, husband of my daughter Emeline S. Hughes, one-half thereof, being the undivided one-fourth of said lots and blocks to him, his heirs and assigns forever; and the other half thereof, being also an undivided one-fourth of said lots and blocks, to the eldest male child then surviving of my son, William B. E. Shufeldt."

This child is the plaintiff in this action. The will then provides that, "after the decease of my said wife," the trustees shall convey the other half of the Butler Hotel property to the grandson (the plaintiff) in fee forever. The will further authorizes and empowers the trustees to "sell the said lots and blocks

and to convey the same in fee simple, saving, caring for and investing the proceeds of such sale for the use herein stated." After various other provisions, the will, in paragraph F, provides:

"All the remainder of my property in which my wife, Emeline M. Shufeldt, is herein given a life estate, I will and bequeath subject to such prior life estate, to my son, William B. E. Shufeldt, to him and his heirs forever, in case he survives both me and my said wife; but if he do not survive my said wife and me, then, subject to said life estate, I will and bequeath all such remainder of my property to the children and their issue of my said son that may then survive; and if no child or children or issue of my said son then survive, I will and bequeath said property to the children of my daughter, Mary Shufeldt Hartshorne, to them and their heirs, per stirpes, forever."

The will continues with other provisions which are unnecessary to be noted here. This action was brought for the purpose of securing the partition of the Butler Hotel property.

It is admitted that the grandson, the plaintiff, has a title in fee simple to an undivided three-fourths of the property, the only controversy is as to the remaining undivided one-fourth, and arises in this manner: The testator died on November 13, 1906. His daughter, Emeline Shufeldt Hughes, died without issue March 21, 1909; her husband, the trustee and the testator's son-in-law, Edwin Hughes, died September 6, 1909, and the testator's widow, Emeline M. Shufeldt, died in March, 1922. The only heirs left by the son-in-law, Edwin Hughes, are three brothers, who are the cross-complainants and respondents in this action. These three brothers are and have always been residents and subjects of Great Britain. It is their contention that they are entitled to the undivided one-fourth interest in the Butler Hotel property which was to go to their

brother, Edwin Hughes. The defendant and appellant, William B. E. Shufeldt, son of the testator, claims an undivided one-fourth interest in the Butler Hotel property by reason of paragraph F, whereby he was bequeathed all the remainder of the property in which his mother had been given a life estate; in other words, he is claiming as a residuary devisee. The case is here for the interpretation of the portion of the will which we have noted, and the question is whether under it Edwin Hughes took a "vested" or a "contingent" remainder.

Appellant claims that Hughes' interest was not a direct bequest or devise of any property and that no title vested or was intended to vest in Hughes, as he was not living at the time the trustees were directed to make the conveyances, and that he, not having lived until after the death of the holder of the life estate, that is, the testator's widow, the one-fourth interest in question falls into the residue.

Hughes' heirs contend that the title to the undivided one-fourth interest vested in Edwin Hughes at the time of the death of the testator or of Mrs. Hughes and would thus descend to his heirs, the cross-complainants and respondents.

It is probably true that no more intricate, technical and perplexing questions have arisen in the interpretation of wills than those which have had their origin in the effort to determine the nature of remainders, as to whether they are contingent or vested. Chancellor Kent, referring to Blackstone's discussion of this subject, praised it for its "perspicuity, simplicity, comprehension, compactness, exactness, accuracy and admirable precision," added "I have read the chapter frequently but never without a mixture of delight and despair." After reading the authorities pertinent to

this case we have received the same delight and suffered the same despair.] As was said by the supreme court of California in *In re Blake's Estate,* 157 Cal. 448, 108 Pac. 287:

"Counsel on both sides in support of their respective positions have brought to their aid much of the abstruse learning which has been devoted to the subject of remainders. There is no subject in the law to which more refinement of learning has been applied, nor one where, particularly in ascertaining whether a remainder is a contingent or vested one, more nice, technical, and shadowy rules of construction have been formulated. Counsel for appellants more particularly invoke the aid of these rules, upon the theory that the language of the will is so uncertain as to the future of the remainder devised as to make them applicable to the proper determination of the intent of the testator in that respect. As to these rules, however, it may be said that there are none of them which may be taken as an unvarying standard by which the meaning or intent of all testamentary devises in remainder may be construed. They have not been harmoniously applied in jurisdictions where they obtain, and whether they are applicable at all must depend upon the particular provisions of each will which is under consideration. They are simply subordinate rules of construction which are applied only in the absence of all other indications in the will to the contrary and in support of an intention on the part of the testator to create a vested remainder."

It goes without saying that in this, as in every other case of construing a will, the supreme purpose is to ascertain the actual intent of the testator; and that should be ascertained, whenever possible, from the language of the will itself, unaided by extrinsic facts. Certain technical rules exist for the gathering of the intent of the testator from the will itself.] Concurring with modern authority sustaining this rule as the proper solution of these complications, this court has

committed itself to the doctrine by having announced in *Webster v. Thorndyke,* 11 Wash. 390, 39 Pac. 677, that ''if the intent of the testator can be gathered from the will, it is the duty of the court to see that such intention is given effect.'' *Martin v. Moore,* 49 Wash. 288, 94 Pac. 1087; *Peck v. Peck,* 76 Wash. 548, 137 Pac. 137; *Denton v. Schneider,* 80 Wash. 506, 142 Pac. 9; *In re Moran's Estate,* 95 Wash. 428, 163 Pac. 922; *In re Peters' Estate,* 101 Wash. 572, 172 Pac. 870; *In re Wilson's Estate,* 111 Wash. 491, 191 Pac. 615. In fact, by statute the duty is imposed on the court to accomplish the true intent of the testator. Section 45, ch. 156, Laws of 1917, p. 653 [Rem. Comp. Stat., § 1415].

''The question in all the cases has been, whether the testator intended it as a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies, and the answer to this question has been sought for out of the whole will, and not in particular expressions.'' *Leeming v. Sherratt,* 2 Hare 14; 3 Bro. C. C. 473.

The intention is to be gathered from the words used as covered by recognized rules, and in cases of doubt and ambiguity, from the situation and surrounding circumstances. *In re Wilson's Estate, supra; Giddings v. Gillingham,* 108 Me. 512, 81 Atl. 951; *Martin v. Cook,* 129 Md. 195, 98 Atl. 489; *Allison v. Allison's Ex'rs,* 101 Va. 537, 44 S. E. 904. Without attempting to promulgate a complete canon of all the rules, the chief ones applicable to the present decision will be here suggested as cardinal, and without an effort being made to reconcile them, for such an effort would be futile.

(1) If necessary in arriving at the intention of the testator, aid may be sought from the testator's situation, his relationship to the parties named in the testament, his disposition as evidenced by provisions to be

made for them, and the general trend of his benevo-
lences as disclosed by the testament: *In re Russell*,
168 N. Y. 169, 61 N. E. 166, affirmed 168 N. Y. 174. It
appears from an examination of Shufeldt's will that in
general the objects of his bounty were the members of
his own family. He gave no legacies to those who can
be said to have been strangers to his blood. The pro-
vision made for Edwin Hughes was a provision made,
not for one of his own blood, but for one of his family
to whom, from the will itself, it appears he felt most
friendly, for he selected him as a trustee and executor
under the will, and as the husband of one of the testa-
tor's daughters he is recognized in the will as a bene-
ficiary.

(2) It may be assumed that the rule which provides
that the word "then," where the will provides that
should the daughter, Emeline S. Hughes, die without
issue, "*then* the said trustees . . . shall convey
. . . to Edwin Hughes," relates, as do similar
words in wills, to the time of the enjoyment and not
the time that the interest vested. *Lingo v. Smith*, 174
Iowa 461, 156 N. W. 402; *Gingrich v. Gingrich*, 146
Ind. 227, 45 N. E. 101; *Ducker v. Burnham*, 146 Ill. 9,
34 N. E. 558; *Davidson v. Jones*, 112 App. Div. 254, 98
N. Y. Supp. 265; *In re Allison*, 194 N. Y. 540, 87 N. E.
1114. The application of this rule to the will here
would tend somewhat to the interpretation that Edwin
Hughes' interest was a vested one.

(3) It is a well settled and just rule that the law
favors the early vesting of estates. *Stokes v. Weston*,
142 N. Y. 433, 37 N. E. 515; *Cammann v. Bailey*, 210
N. Y. 19, 103 N. E. 824. But this rule, as was said by
the court of appeals in *Dougherty v. Thompson*, 167
N. Y. 472, 60 N. E. 760, is not a rule which would over-
ride the contrary intention of the testator, and is re-

sorted to only for the purpose of avoiding "perpetuities, intestacy, illegal suspension of the power of alienation, and to effect an intent which might otherwise be defeated." In other words, it is a rule to be invoked in aid of the intention of the testator to create a vested remainder, although there is no question here of the evils referred to in the quotation above, and there is therefore no reason for the application of the rule on those scores.

(4) The next rule is that the remainder shall not be considered as contingent in any case where consistently with the intention of the testator it may be considered vested. This is but a variant of the foregoing rule. *Doe v. Considine,* 6 Wall. (U. S.) 458; *Hersee v. Simpson,* 154 N. Y. 496, 48 N. E. 890; *Connelly v. O'Brien,* 166 N. Y. 406, 60 N. E. 20.

(5) As a modification of rule four, we find it stated that the law favors that construction which holds a remainder vests rather than that which considers it contingent, even in cases where the question is doubtful. *Brown v. Lawrence,* 3 Cush. (Mass.) 390; *In re Kountz's Estate,* 213 Pa. St. 390, 62 Atl. 1103.

(6) When the person to whom or the event upon which the estate is limited to take effect remains uncertain until the end of the life estate, the remainder is contingent. *Clark v. Cammann,* 160 N. Y. 315, 54 N. E. 709. In the present case, upon the death of Shufeldt it was uncertain whether the possible issue of Mrs. Hughes would take the remainder or Mr. Hughes, but, of course, before Mrs. Shufeldt's death the contingencies in the way of Hughes' enjoyment of the estate had been removed by the death of his wife without issue, so that if Hughes took the vested remainder, the respondents wisely argue that it became vested upon the death of his wife.

(7) If, when the will goes into effect, there is no contingency either as to the person entitled to the remainder, or as to the event by which the intermediate estate is to be determined, then the remainder is vested.

(8) If the postponement of the payment of the legacy or the enjoyment of the devise is for the purpose of letting in intermediate estates only, then the remainder shall be deemed vested at the death of the testator and the legatees and devisees are to be determined as of that date, for under those circumstances no futurity is annexed to the substance of the conveyance, but only to the time of its enjoyment. *In re Crane,* 164 N. Y. 71, 58 N. E. 47; *In re Kountz's Estate, supra; Martin v. Cook, supra; Loder v. Hatfield,* 71 N. Y. 92. This rule is subject to some modifications.

(9) The principal modification to the foregoing rule has arisen under the rule which has been commonly known as the "divide and pay" rule, which was originally applicable in construing wills relating to personal property, following the rule of the civil law which was that, when a legacy *was given absolutely* and payment of it was only postponed to a future definite period, time was considered as annexed to the payment and not to the gift. Where the legacy was *only directed to be paid* at a future period without any gift of the legacy independently of that direction, the courts hold that the time of payment was annexed to the legacy itself and not merely to the payment of it, and that therefore where a legatee died before the time of payment his heirs would not take. *Leeming v. Sherratt, supra.* Whereas this rule originally related only to legacies, the courts in the course of time made it applicable to some devises as well. *Martin v. Cook, supra;* and the rule is now recognized and at times applied to both kinds of testamentary disposition. The

supreme court of Wisconsin, in *In re Benner's Will,*
133 Wis. 325, 113 N. W. 663, said:

"The rule, that nothing appearing convincingly to
the contrary, the presumption is that the bequest takes
effect and vests absolutely in point of right at the death
of the testator. . . . is displaced by the rule that
a bequest in the form of a direction to divide between
and distribute to specified persons vests in those in
esse answering to the description at the appointed time
for division and distribution."

An examination of the will shows that although the
interest that Hughes was to receive did not come to
him necessarily in the shape of a legacy (although the
trustees had the power to convert the Butler Hotel
property into cash), yet, assuming it remained as a
devise, the one-half interest which would have gone to
Mrs. Hughes' possible issue was, upon her death with-
out issue, to be divided, one-half to Edwin Hughes and
the other half to William B. E. Shufeldt. The supreme
court of Iowa, in *Olsen v. Youngerman,* 136 Iowa 404,
113 N. W. 938, discussing this divide and pay rule said,
"where the only words of gift are found in the direc-
tion to divide or pay at a future time, the gift is future,
not immediate; contingent, not vested." *In re
Kountz's Estate,* 213 Pa. St. 390, 62 Atl. 1103; *Mc-
Cartney v. Osburn,* 118 Ill. 403, 9 N. E. 210. In *Fulton
v. Fulton,* 179 Iowa 948, 162 N. W. 253, the Iowa court
later said:

"There is one feature of this case that is quite de-
cisive, and we give it our first attention. It will be
noted that, by the terms of the will the testator directed
that, upon the death of his wife, all his property should
be divided among his children, etc. There is no other
provision in the will whereby it purports to divide any
property to any children. The devise to them is im-
plied by the direction to divide above quoted. In such
a case we have held repeatedly that the devise or gift

is inseparable from the direction to divide, and, where the directed division is by the terms of the will postponed to a future date, the gift is likewise postponed. In such a case, the remaindermen take a contingent and not a vested remainder. And this is especially so, where the will imposes the condition that the remaindermen survive the future event, or have issue."

(10) The divide and pay rule itself has been modified, some courts, recognizing that the rule was an exception to rule eight above, have held that even' where the postponement of the payment was only for the purpose of letting in an intermediate estate and that then the beneficiary would be determined as of the date of the death of the testator, and that futurity would not be annexed to the substance of the gift, yet have held that such remainders were contingent if there was not added to the provision for the remainder words of gift to the remainderman in addition to the directions to the trustees, where the estate was given to trustees to be paid or divided or distributed. In *In re Crane, supra,* it was said:

". . . aside from the direction to the executors or trustees to divide and distribute the estate, there are no words importing a gift, and hence it becomes our duty to give force and effect to the rule that, where the only gift is found in a direction to divide or pay at a future time, the gift is future, not immediate; contingent, and not vested."

See, also, *Smith v. Edwards,* 88 N. Y. 92; *Olsen v. Youngerman; In re Benner's Will, supra; Smith v. Smith,* 116 Wis. 570, 93 N. W. 452; *Grapho v. Price,* 76 N. E. (Mass.) 1043; *Eager v. Whitney,* 163 Mass. 463, 40 N. E. 1046, and *Hale v. Hobson,* 167 Mass. 397, 45 N. E. 913. The Shufeldt will, even though it may be considered as not annexing futurity to the substance of the remainder but only to the time of enjoyment,

contains no words of gift to Mr. Hughes in addition
to the direction to the trustees to divide and pay. This
phase of the case arises again under a subsequent rule,
where we will further discuss it.

(11)   The divide and pay rule by some courts has
been further modified so as to confine its applicability
to remainders which were to be paid to a class, the
members of which could not be determined until the
time came for division and payment. *In re Baer,* 147
N. Y. 348, 41 N. E. 702; and *Storrs v. Burgess,* 101 Me.
26, 62 Atl. 730. It is true that the divide and pay rule
has largely been applied in such cases, but not uni-
versally so. There are many cases, of which the fol-
lowing are examples, where it has been applied when
the remainder has been given to a designated individ-
ual. *Giddings v. Gillingham,* 108 Me. 512, 81 Atl. 951;
*Dougherty v. Thompson, supra; Klinger v. Klinger,*
140 N. Y. Supp. 147; *In re Crane, supra.*

(12)   A rule which bears close relation to the divide
and pay rule (and it may be noticed that these rules
are so interlocked and interwoven the surgeon in the
use of his scalpel has difficulty in dissecting them) is
that, where the will contains a provision giving the
property to trustees, who are to manage it and see to
the distribution of the various estates conveyed out of
it, that persons taking from the trustees take through
what is called a "power in trust," and that they derive
no title from the testator but derive a title from the
trustee, and that therefore the estate does not become
vested in them until the trustees have made the con-
veyance. *In re Kountz's Estate, supra; Smith v. Ed-
wards, supra; In re Brown,* 86 Me. 572; *McLain v.
Howald,* 120 Mich. 274, 79 N. W. 182; *Mitchell v. Mit-
chell,* 73 Conn. 303, 47 Atl. 325; *Clark v. Shawen,* 190
Ill. 47, 60 N. E. 116; *In re Vander Roest,* 95 Misc. Rep.

21, 160 N. Y. Supp. 215; *Lewisohn v. Henry,* 179 N. Y. 352, 72 N. E. 239. The court of appeals in *In re Baer,* 147 N. Y. 348, 41 N. E. 702, said:

"Moreover, there are not in this devise any words of direct and immediate gift to the children or heirs of the brother, but a direction that the trustees should convey to them at a future time on a certain contingency. They were to take through the medium of a power in trust, and the time of the vesting of the interest was thus deferred, in form, at least, until the time of distribution. It is a case, then, where, as the cases express it, 'futurity is annexed to the substance of the gift,' and warrants the application of the principle that, where a future interest is devised, not directly to a given person, but indirectly through the exercise of a power conferred upon trustees, the devise is designed to be contingent, and survivorship at the time of distribution is an essential condition to the acquisition of an interest in the subject of the gift."

The contrary situation to the above premise exists here. Other courts, in cases where trustees have taken the title under wills containing similar provisions to those discussed in the cases just cited, have come to an opposite conclusion and have held that the remainders thus provided for were vested. *Leeming v. Sherratt, supra; Patton v. Luddington,* 103 Wis. 629, 79 N. W. 1073; *Commonwealth v. Wellford,* 114 Va. 372, 76 S. E. 917; *Bolton v. Ohio Nat. Bank,* 50 Ohio St. 290, 33 N. E. 1115; *Trenton Trust & Safe Deposit Co. v. Moore,* 83 N. J. Eq. 584, 91 Atl. 908. Under the will before us, the specific devise was made, but the trustees were to convey "said undivided one-half of said lots and blocks . . . to Edwin Hughes." But this is merely to distribute the estate according to the provisions of the will and convey legal title.

(13) Another rule has been stated to the effect that words of futurity alone should not be regarded as

embodying contingencies if they point merely to deferred possession or enjoyment. This is probably but a restatement of the rule already given, but the courts in *Tayloe v. Mosher,* 29 Md. 443, and *Martin v. Cook, supra,* have stated it in slightly different language than we have found it elsewhere reported.

(14)   A remainder is contingent when the estate is to take effect either upon a dubious or uncertain event or to go to a dubious or uncertain person and in such a manner that it may never take effect. *Fulton v. Fulton, supra.*

(15)   In the designation of the remainder to Edwin Hughes, the words "to him and his heirs forever," although they create a fee simple, indicate that the remainder was in some manner to be different from that given to the other devisees and legatees, because where other fee simple estates are provided for in the will they are given "in fee," "in fee forever," "in fee simple." *Loder v. Hatfield, supra.* The use of different words of conveyance in describing the same character of estate may be some indication that the testator had in mind a difference in the character of the remainder created.

(16)   Where a remainder is created to go to the children, the inference that the testator intends to give them a vested right is much stronger than where the remainder is created for the benefit of persons having no natural claim upon his bounty. *Atchison v. Francis,* 182 Iowa 37, 165 N. W. 587, L. R. A. 1918E 1087. Here, of course, Mr. Hughes had no natural claim upon Mr. Shufeldt's bounty, although he had established himself in the affections of the testator.

An excellent symposium and analysis of the law as found in the authorities is given in L. R. A. 1918E, beginning on page 1097, and continuing 121 pages.

Therein the editors state that the so-called "divide and pay" rule has been a subject of both criticism and approval.

"Although it may be a useful rule where kept in proper subordination, the tendency of the courts to give it undue prominence as an evidence of the testator's intention has certainly been productive of some incorrect decisions; and taken all in all it has raised more doubts than it has resolved." L. R. A. 1918E, p. 1108.

The case of *In re Lotz*, 92 Misc. Rep. 683, 157 N. Y. Supp. 685, was quoted where the surrogate of Kings county, New York, said:

"Hence the courts have revolted from the injustice thus caused, and the homely instinct of righteousness has compelled the qualification that, when the gift over is contained only in the direction to pay and divide at the end of an intermediate estate, the gift shall not be contingent if by the utmost effort and cunning a contrary intention can be detected in the will."

It is thought that the rule in Shelley's case, which as a principle of common law is in force in this state, sustains the contention that the remainder under discussion could not be a vested remainder. That arises from a misunderstanding of the rule in Shelley's case.

Under the rule in Shelley's case, if an estate for life is granted by an instrument and the remainder is limited by the same instrument, either mediately or immediately, *to the heirs of the life tenant*, the life tenant takes the remainder as well as the life estate.

The requisites of the rule are these: "first, a freehold estate; second, a limitation of the remainder to the heir or heirs of the body *of the person taking the freehold estate*, by the name of the heirs as a class, and without explanation, as meaning sons, children, etc.; third, the estates of freehold and in remainder

must be created by the same instrument; fourth, the estates must be of the same quality—that is, both legal or both equitable." *Bails v. Davis*, 241 Ill. 536, 89 N. E. 706, 29 L. R. A. (N. S.) 937.

While the significance to be attached to the words "to him, his heirs and assigns forever," in the devise following the direction to convey to Edwin Hughes, ordinarily is that they are words of purchase, yet, taken in conjunction with all the provisions of the will, and the language used by the testator, it is evident that it was the intention of the testator thereby to devise a definite and certain estate to Edwin Hughes.

Consequently, under the principles of construction to be applied to the provisions of this will, we conclude that the remainder to Edwin Hughes was certain as to identity of the remainderman, and he was capable and competent to take possession and enter into the enjoyment thereof the moment the prior estates would determine. It was, therefore, a vested remainder. *In re Kountz's Estate, supra; Martin v. Cook*, 129 Md. 195, 98 Atl. 489; *Stevens v. Carroll*, 64 Ore. 417, 129 Pac. 1044, L. R. A. 1918E 1095; *Atchison v. Francis, supra;* Fearne, Contingent Remainders, 216; *Croxall v. Shererd*, 5 Wall. (U. S.) 268; *McArthur v. Scott*, 113 U. S. 340; *Austin v. Bristol*, 40 Conn. 120; *Norton v. Mortensen*, 88 Conn. 28, 89 Atl. 882; *Cushman v. Arnold*, 185 Mass. 165, 70 N. E. 43.

If the estate devised to Edwin Hughes filled the description of a vested remainder it was assignable, descendable, and devisable. 23 R. C. L. 576; *Lindsley v. Dennis*, 6 N. J. Law J. 246.

See, also, *In re Allison*, 53 Misc. Rep. 222, 102 N. Y. Supp. 887, 107 N. Y. Supp. 1119, affirmed in 87 N. E. 1114; *Garrison v. Dudley*, 79 Md. 75, 28 Atl. 1062; *Vandewalker v. Rollins*, 63 N. H. 460, 3 Atl. 625; *Leem-*

*ing v. Sherratt,* 2 Hare 14; *Packham v. Gregory,* 4
Hare 396; *Doe v. Considine,* 6 Wall. (U. S.) 458; *Bolton
v. Ohio Nat. Bank, supra;* Minor on Real Property,
§ 781; 1 Tiffany Real Property, § 135 and § 137; 23
R. C. L., p. 576; 11 R. C. L., p. 484; 28 R. C. L., p. 233;
23 R. C. L., p. 524.

To our minds, the overwhelming weight of authority
supports the above conclusions.

The judgment of the lower court is therefore af-
firmed.

MAIN, C. J., TOLMAN, FULLERTON, PARKER, BRIDGES,
and MITCHELL, JJ., concur.

MACKINTOSH, J. (dissenting) — Chancellor Kent's
comment on Blackstone's treatment of the subject of
remainders very inadequately expresses the perturba-
tion resultant from a repeated reading of the majority
opinion.

The various rules stated give very little, if any, as-
sistance in the determination of the question before
us, which is, what was the testator's intent. It matters
not how labored a discussion is indulged in in attempt-
ing to answer this question, the fact remains that the
answer must be gathered from within the four sides
of the instrument, and as I read Mr. Shufeldt's will in
its entirety it was the intention of that old gentleman
that his property, so far as he was able to control it
after his death, should be used for the maintenance
and comfort of his immediate family. He had no de-
sire to make strangers the recipients of even a mo-
dicum of his bounty. He recognized no public or
private charity, he provided not a sou markee for any-
one who was not, during his lifetime, in some way de-
pendent upon him, and a multitude of rules which have
been created for the purpose of giving effect to the

intent of a testator should not be used to becloud the luminous intent of this will maker.

An examination of the authorities cited in the prevailing opinion, and many others contained in the books, discloses that in every instance the rule which has been finally adopted by the court passing upon the case has been used only for the purpose of effectuating what logically must have been the desire of the testator. It may not always have been a controlling reason for the holding in each case, but it is a striking coincidence that in cases of doubt remainders have been held to be vested where their recipients were persons to whom the testator would naturally desire to show benevolence, and have been held contingent where their recipients were persons who, as the Hughes' heirs here were, were totally unknown to the testator.

It may be well to here note the fact that a great many of the cases referred to in the opinion as authority for holding this remainder vested have arisen in New York state. This is probably due to the fact, as noticed by the supreme court of Wisconsin, in *Patton v. Ludington,* 103 Wis. 629, 79 N. W. 1073, that in New York and Wisconsin statutes exist which have had the effect of modifying the common law rule. These statutes were passed primarily to cover a situation where a bequest or devise could not take effect in favor of unknown heirs who died before the testator, and it is said by the Wisconsin court, in *Patton v. Ludington, supra,* that:

"To obviate such effect, our statute, taken substantially from New York, as indicated in the last case cited, provides that 'when a devise or legacy shall be made to any child or other relation of the testator and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposi-

tion shall be made or directed by the will.' "

This statutory rule, while not applicable to the situation here, was apparently by the courts of New York applied to situations similar to the one here. The supreme court of Iowa, in *Fulton v. Fulton*, 179 Iowa 948, 162 N. W. 253, said:

"In view of the difference of opinion disclosed by the dissent filed herewith, some attention will be. given herein to the essential distinction between vested and contingent remainders. There is confusion in the cases on the subject. The confusion is one largely of inadvertence, and it must be confessed that few of the appellate courts have wholly escaped it. Generally speaking, there are two different rules extant in the books for determining whether a remainder in a given case be vested or contingent. This difference of rule arose by reason of legislation, first adopted by the state of New York in 1830. The common law definition of 'remainders' may be stated briefly as follows: 'Remainders are either vested or contingent. A vested remainder whereby the estate passes by the conveyance, but the possession and enjoyment are postponed until the particular estate is determined, is where the estate is invariably fixed to remain to certain determinate persons. Contingent remainders are where the estate in remainder is limited to take effect either to a dubious or uncertain person or upon a dubious or uncertain event, so that the particular estate may be determined and the remainder never take effect.' In 1830 the legislature of New York adopted a statutory rule as follows:

" 'Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the land upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom or the event upon which they are limited to take effect remains uncertain.' At the time of the adoption of this statutory rule it was supposed by the textwriters that it was a mere simplification and codification of the

common law upon the subject. It was later held, however, by the court of appeals of that state, that this legislation had the effect of changing the common law rule, and that certain remainders which were contingent under the common law were vested under the New York statute. *Coster v. Lorillard,* 14 Wend. 265; *Hawley v. James,* 15 Wend. 61:  .  .  .   By judicial construction of the New York statute the rule was declared that when there is a person in being who would have immediate right to the possession of the land if the intermediate or precedent estate were now terminated, the remainder is vested and not contingent. To this rule was the qualification that a vested remainder could be rendered defeasible by a condition subsequent.

"The New York statute has been adopted by legislation in a few other states. In other states the New York decisions have been followed inadvertently in oversight of the fact that they did not purport to follow the common law rule.  .  .  .   The foregoing is a sufficient indication of the presence in the body of the law of two differing rules or definitions of vested and contingent remainders. These conflicting rules through oversight of their divergence have become the occasion of confusion. In order to avoid further confusion, the fact that two rules are running at large among the decisions should. be borne in mind; the distinction between them should be observed and one of them alone should be adopted and consistently followed. In this state the common law rule presumptively prevails.

"We have no statute similar to that of New York. The New York decisions indicate the great difficulty that has been encountered there to maintain the consistency of the New York rule. The later New York cases indicate a manifest retreat from some of the ground occupied in the earlier cases."

As noted by the Iowa court, it was due to a recognition by the New York courts that the statutory rule had been misapplied that we find the later New York cases adopting the divide and pay rule.

Even though it might be conceded that equally positive arguments could be advanced in favor of there

having been created a vested or contingent remainder, we find the scale swinging evenly and it takes additional weight placed in one or other of the pans to disturb the balance. Such additional weight seems to be at hand. It finds sanction in the law, has been often stated and is to the effect that the general scope and purpose, as well as the particular language of each instrument, viewed in the light of the circumstances known to the testator, are matters which are superior to all arbitrary rules of interpretation. *Giddings v. Gillingham,* 108 Me. 512, 81 Atl. 851; *Weston v. Weston,* 125 Mass. 268, and *Heard v. Reed,* 169 Mass. 216, 47 N. E. 778.

Taking this instrument in its whole scope, as I have said, it shows that Henry Shufeldt intended to perpetuate his estate within his immediate family and thus provide for those who during his lifetime had leaned upon him for support, and did not intend to step outside the family circle to bestow favors upon strangers, for nowhere in his will has a bequest or devise been made to a stranger or to any public or private charity, or in any way outside the family. This is true, even considering the provision made for Edwin Hughes, for the will clearly indicates that Hughes was a member of the family in fact as well as in name. He had obtained the testator's affection and respect, and the beneficence in his favor was no violation of the purpose and intent of Shufeldt to benefit only the family. It was Shufeldt's clear purpose to keep the Butler Hotel property in a single trust, as is evidenced by his giving it to trustees, and that it or its proceeds should there continue during the life of his wife, and then, when it became necessary to divide it, that it was his intention to have the property remain as nearly as possible unified. Shufeldt had no knowledge or ac-

quaintance with or obligation to the foreign heirs of his son-in-law. In the ordinary experience of mankind, their entry into what amounts to a partnership with the Shufeldt heirs would be the injection of a disturbing element. The testator's prime motive was first to make ample provision for his wife's support and comfort, and when her need no longer existed, to provide for those who were the natural objects of his love and bounty. It clearly appears that the deceased was not one who would embrace within that love and bounty strangers such as are the respondents. As we have already indicated, where rules of construction make possible either one of two results, this consideration affords that additional weight to which reference has been made and must tip the scale in favor of that interpretation which holds that the remainder created for Edwin Hughes was contingent upon his surviving Mrs. Shufeldt, and he having died before she did, that remainder goes now to the residuary devisee.

For these reasons I dissent.