[No. 130-40895-2.    Division Two.    February 5, 1970.]

JAMES L. TEITZEL, as *Executor*, *Appellant*, v. GILBERT C. VALLEY, *as Administrator, Respondent.*

*Searle & Baker* and *Brian M. Baker,* for appellant.

*Nordquist & Olson* and *Dale M. Nordquist* for respondent.

PEARSON, J.—This is an action to construe the last will and testament of Inez Teitzel. The action is brought by the executor of the estate of one of the beneficiaries named in her will.

From a judgment in favor of the administrator of Inez Teitzel's estate, the plaintiff, James Teitzel, executor and sole beneficiary of the estate of Fred Teitzel, appeals.

The sole issue raised by the appeal is whether or not the will of Inez Teitzel created a vested interest in Fred Teitzel

at or prior to his death, which would pass by his will to his heirs. The trial court held that no such vested interest was created.

Inez Teitzel died February 25, 1961. Her son, Fred Teitzel, died September 13, 1962. The pertinent provisions of the last will and testament of Inez Teitzel are as follows:

## V

I give, devise, and bequeath the old farm on which my deceased husband and I lived for many years, and including, but not limited to, the following described real estate:

[Description]

to my daughter, VIOLET WAGNER, *in trust,* nevertheless, to *hold, manage, pay,* and *distribute* as follows:

1. During the duration of the trust period, my son JAMES LLOYD TEITZEL and my son FRED H. TEITZEL, or the survivor of them, shall have the *management and control* of said farm and real estate and shall be entitled to the *income* therefrom subject to the following:

    a. *During the trust period,* the timber on the said farm, down to eight inches (8″) diameter at any given time and subject to careful logging to reasonably protect younger growth, may be sold *if* at least three of my five children, or their legal representatives, should desire to sell; in the event of such sale or sales of timber during the trust period, the *proceeds shall be divided, share and share alike, among my five children or their heirs except as herein provided. (My grandchildren ARLENE and FREDDIE WILLIAMS should in any event receive only the one dollar ($1.00) as hereinafter provided.)*

2. On January 1, 1972, this trust shall terminate and the property in the trust, namely, the farm aforementioned, shall be distributed as follows:

    a. If my son, JAMES LLOYD TEITZEL, be living then the trustee shall at the termination of the trust distribute the said farm, less the Easterly fifty (50) acres thereof of even width of the Southeast Quarter (SE ¼) of Section eighteen (18) Township thirteen (13) North, Range 1 West, W.M. Lewis County, State of Washington, to my

son, JAMES LLOYD TEITZEL, subject, however, to a life estate in an undivided one-half interest to my son FRED H. TEITZEL.

b. The Easterly fifty (50) acres of even width of the Southeast Quarter (SE ¼) of Section Eighteen (18), Township thirteen (13) North, Range one (1) West, W.M., Lewis County, Washington, shall be distributed equally, share and share alike, an undivided one-half interest to each, to my daughters, VIOLET WAGNER and DIXIE ALEXANDER.

c. The distribution above set forth of real estate to my children as aforesaid *is of the real estate only without the timber* above a size of eight inches (8″) in diameter, it being my wish that within *two years of the termination of the trust* that the marketable timber down to eight inches (8″) in diameter be sold and the proceeds thereof divided, share and share alike, *among my five children, or their survivors as herein set forth.* In the harvesting of timber reasonable logging practices shall be followed so as not to unduly damage the younger timber of a smaller size than eight inches (8″) in diameter.

d. If at the time of the termination of trust my son, JAMES LLOYD TEITZEL, should be deceased, I then direct that all of the said trust shall be distributed *to my other children,* DIXIE, VIOLET, *and* KEENE, *and to the children of* JAMES *or other children of any of my deceased children in the same manner as if said trust were an estate to be distributed under the Laws of Intestate* Distribution, provided by the Probate Code of the State of Washington, PROVIDED, HOWEVER, that the children of my son FRED, namely, ARLENE and FREDDIE WILLIAMS, shall receive only One Dollar ($1.00) each and no more. This Par. 4. is subject to a life estate in my son FRED.

[3 is omitted in the will.]

4. In the event that the Trustee should predecease me or die prior to the conclusion of the trust, I then direct that the Court shall appoint a successor trustee or trustees from a list of names nominated by my then surviving children or any of them.

5. The Trustee shall be to the extent permitted by law relieved from compliance with the obligations of any and all trustee's accounting statutes now or hereafter in effect in the State of Washington, it being my intent *that this trust is essentially a title-holding trust rather than a management trust;* the trustee shall be entitled to be recompensed for any expense incurred by her and also to a reasonable allowance for her services as Trustee.

### VI

All the rest and residue of my estate, of every kind and description, presently owned or hereafter acquired, I give, devise, and bequeath, share and share alike, to my five children, namely,

DIXIE ALEXANDER, VIOLET WAGNER, FRED H. TEITZEL, KEENE L. TEITZEL, and JAMES LLOYD TEITZEL; PROVIDED, HOWEVER, that in the event of the death of my son FRED that his children, ARLENE and FREDDIE WILLIAMS, shall receive One Dollar ($1.00) each, and no more.

(Italics ours.)

Plaintiff contends first that the trust created by paragraph 5 was a passive trust and therefore executed into a legal estate in the beneficiaries immediately upon the death of Inez Teitzel.

Secondly, plaintiff claimed that, in any event, the timber described in the will was not subject to the trust; and finally, that the five children received a vested interest in the property covered by paragraph 5 (especially the timber) immediately upon the death of Inez Teitzel.

Under any of the above hypotheses, it is contended that Fred Teitzel could devise by will his interest in his mother's estate.

█ It is elementary law that a vested interest is alienable and devisable while a contingent interest is not. Whether an estate is to vest immediately, or subsequently, depends upon the testator's intention, as found from an examination of the will. *In re Estate of Quick,* 33 Wn.2d 568, 206 P.2d 489 (1949).

The will in question, as a result of Fred's death, gave James Teitzel the management, control, and income from

the farm property. In 1972, James, if living, will receive legal ownership of the farm property, less 50 acres which go to his two sisters as tenants in common. Paragraph 5 states that the trust is primarily "a title-holding trust rather than a management trust." The fact that James has rather complete control of the farm and a remainder in fee, has been urged by plaintiff as proving that the trust is passive. *See* 1 G. Bogert, Trusts and Trustees § 207 (2d ed. 1965); 54 Am. Jur. *Trusts* § 12 (1945).

However, it is perfectly clear from the terms of her will that Inez intended to delay the final distribution of her real property until 1972. Her obvious purpose in creating the trust and delaying final distribution was to determine who is living in 1972 and to distribute *at that time* according to an established scheme. She intended that a deceased child's share should be distributed in accordance with her will and not as each child might wish.

To apply the plaintiff's theory by declaring the trust to be passive and executed into a legal estate would thwart her intention. However, we believe the trust is active. The trustee has the duty of holding legal title until 1972, and then to distribute the property to persons unascertainable until that time. A will imposing on a trustee the duty to hold title and to later distribute among beneficiaries whose identity cannot be determined until the time for distribution, creates an active trust. 1 G. Bogert, Trusts and Trustees § 209; *In re Will of Hickok*, 61 N.M. 204, 297 P.2d 866 (1956). Consequently, we affirm the trial court's determination that the trust was active.

The trial court held that the right to the proceeds of the timber sales was also subject to the trust. We disagree with this interpretation, but our disagreement is without consequence, since we conclude that at the time of his death, Fred had only an executory interest in the proceeds of the timber sale which was not subject to testamentary bequest.

The provisions of the will treat the timber differently than the farm property. Fred and James were entitled to the income from the trust property during the trust period

"subject . . . to" the right of the children to share in the proceeds of a consensual timber sale (paragraph 5 (1) (a)). These proceeds were subject to immediate distribution "if . . . three of my five children" desire to sell. Paragraph 5 (2) (c) states that the distribution of property in 1972 is to be "of the real estate only without the timber" above 8 inches. Moreover, that same paragraph provides for a sale and distribution of proceeds within 2 years after "the termination of the trust." Also, a separate distribution scheme was set up for the timber proceeds.

We believe the testatrix evidenced an intention to exclude the timber proceeds from the trust and we note that the first timber sale has been handled by the executor rather than the trustee.

Pursuant to paragraph 5 (1) (a) a sale of timber was made after Fred's death. The executrix of Inez Teitzel's estate divided the proceeds equally among the four surviving children (since Fred left no wife or children other than those disinherited in the will).

James Teitzel, as sole beneficiary and executor of Fred's estate, claims that Fred's estate was entitled to one-fifth of the sale proceeds. He claims that the interest of each of the five vested on the death of Inez Teitzel and hence Fred's vested one-fifth interest was devisable.

The trial court found that the children did not receive a vested interest in the proceeds and, consequently, that whatever interest they obtained was not devisable.

We agree with the trial court. We think that the testatrix intended to delay the vesting of her children's interest in the proceeds until the time of the sale or sales. In this respect her intent with regard to the proceeds was similar to her intent regarding the realty.

There are several indications in the language of paragraph 5 (1) and (2), that the persons who are to share in the proceeds are not to be determined until the time of the division of the proceeds:

(1) The gifts are of *divided proceeds*, rather than of the timber itself.

(2) Directions concerning harvesting show the testatrix did not intend for her children to have present and exclusive power over the timber upon her death.

(3) The language in paragraph 5 (1)(a) incorporates words of condition into the gift, namely, the timber may be sold "if at least three . . . children . . . should desire to sell"; "in the event of" a sale the "proceeds shall be divided . . .". These words of condition run contrary to an interpretation of a vested gift. *In re Estate of Quick, supra.*

(4) The language of the will evinces that the testatrix used the word "heirs" in its primary meaning to apply to those who would take property under the laws of intestate distribution. A person's "heirs" or "survivors" cannot be determined until he has died. The application of this interpretation negates the plaintiff's interpretation of "heirs" as a technical word of inheritance, showing an intent to devise a vested gift. In paragraph 5 (2)(c) the testatrix used the word "survivors" rather than "heirs," indicating that the persons to take the proceeds were to be determined at the time the proceeds were distributed. 5 W. Bowe & D. Parker, Page on Wills § 43.13, at 375-376 (1962). The use of the word "or" in connection with "heirs" and "survivors" is also indicative of the testatrix's intention that "heirs" is not used as a word of inheritance vesting an interest in the children. This usage shows, instead, the constant intent to determine who is alive and eligible at the distribution of proceeds and then to distribute according to the testatrix's direction.

(5) Inez Teitzel followed a uniform scheme of disinheriting her two grandchildren, Arlene and Freddie Williams (who are apparently Fred's children, adopted by a subsequent husband of Fred's wife). The exclusion of two specific such "heirs" or "survivors" reinforces our analysis of the interests as non-vested because such usage again indicates that the persons *to take* should be determined at the time of distribution. It appears that Fred had no other children than those disinherited. We think the testatrix intended

that any other surviving children of Fred would have shared in the proceeds.

■■ We recognize that the law favors the construction of interests as being vested. *In re Estate of Quick, supra; Edwards v. Edwards,* 1 Wn. App. 67, 459 P.2d 422 (1969). However, this rule does not apply if a clear intention is manifested otherwise. *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 P. 6 (1924). We think the testatrix clearly manifested her intention that the vesting of the interests of her children "or their survivors," in the proceeds of the sale of the timber be delayed until the time for division and distribution. Such a gift is an executory interest, and contingent rather than vested. It is not subject to testamentary disposition. A gift which is made by a direction to divide at some future time or event is not a vested interest. 5 W. Bowe & D. Parker, Page on Wills at 376.

We hold that the farm property is subject to the trust and that distribution of that property should take place in 1972 as the testatrix provided. The estate of Fred Teitzel will not share in that distribution. The timber sale proceeds are not subject to the trust. However, vesting of a child's interest in the timber proceeds is postponed until the time of distribution, according to who survives.

Judgment is affirmed as modified.

ARMSTRONG, C. J., and PETRIE, J., concur.