[No. 30501. Department Two. December 16, 1948.]

CAROLINE E. HORTON, *as Trustee, et al., Respondents,* v.
BOARD OF EDUCATION OF THE METHODIST PROTESTANT
CHURCH, *Appellant.*[1]

[1]Reported in 201 P. (2d) 163.

*Bell, McNeil & Bowles,* for appellant.

*Evans, McLaren, Lane, Powell & Beeks, Cosgrove, Terhune & Schlosstein, Shorett, Taylor & Revelle* and *Wettrick, Flood & O'Brien,* for respondents.

JEFFERS, J.—This action was instituted in the superior court for King county by Caroline E. Horton, as sole surviving trustee under the last will and testament of Dexter Horton, deceased, against the Board of Education of the Methodist Protestant Church, a corporation, Lauren Trethewey, Hazel Trethewey Rohne, and Myrtle Jones, for the purpose of obtaining a decree terminating, disposing of, and closing a certain trust; for designation as to whom the money remaining in the trust fund provided for under the will should be paid; for an allowance to herself as trustee in closing the estate; and for an allowance by way of attorney's fees for counsel who have represented her in the matter.

While some testimony was introduced at the trial, we are of the opinion such testimony did not tend to show any fact or facts in addition to the stipulated facts material to a decision of the questions raised herein. We are, therefore, of the opinion that the questions raised are pure questions of law and involve the construction of the will of Dexter Horton, particularly that clause in the will creating the trust fund here involved.

Dexter Horton had three daughters, Caroline E. Horton (plaintiff herein), Nettie Horton Jones, deceased, and Rebecca Horton Briggs, deceased. Defendant Myrtle Jones is the daughter of Nettie Horton Jones. Defendant Hazel Trethewey Rohne is the great-granddaughter of Dexter Horton, and defendant Lauren Trethewey is the great-grandson of Dexter Horton, these defendants being the children of Laura Briggs Trethewey, who was the daughter of Rebecca Horton Briggs.

While Lauren Trethewey, Hazel Trethewey Rohne, and Myrtle Jones were made defendants, their contentions in this action are the same as those of plaintiff, Caroline E. Horton.

Defendant Board of Education of the Methodist Protestant Church claims to be the assignee of all the right, title, and interest in and to the trust fund herein involved, by virtue of assignments and conveyances from the Methodist Protestant University of Kansas City, Kansas, referred to in subd. 4A of the third section of the will of Dexter Horton.

It was stipulated that the correct name of the university mentioned and intended herein was "The Kansas City University," a corporation organized under the laws of the state of Kansas.

Dexter Horton died on or about July 28, 1904, being then a resident of the city of Seattle, King county, Washington, leaving his last will and testament bearing date November 11, 1903. Thereafter, the will was duly admitted to probate and administered in accordance with the provisions therein contained. While several provisions of the will will be referred to and set out in this opinion, the main question here presented involves the construction to be given to the following provisions appearing in subd. 4A of the third section of the will:

"4. My said executors and trustees shall set apart the sum of one hundred thousand dollars, and divide the same into three equal parts, to be known and designated 'A', 'B' and 'C' and safely invest the same in safe and sound interest bearing securities and use and apply the principal and interest to accrue thereon to the following uses and purposes, that is to say:

" 'A' The interest to accrue on part 'A' or so much thereof as shall be necessary and expedient for the maintenance, support and education of my dear granddaughter, Ida E. Briggs, of Seattle, the daughter of my deceased daughter Rebecca Horton Briggs, and her husband Benjamin F. Briggs, deceased. If said interest shall be insufficient for the purposes, then in that event my said executors or trustees, in their discretion are authorized and empowered to use so much of the principal for such purposes as they shall deem necessary and expedient. And after her death and the payment of her funeral and other expenses, I order and direct my said executors and trustees to pay unto the Methodist Protestant University of Kansas City, Kansas, all of the unexpended principal and interest thereof, if any, to have and to hold the same forever."

The first section of the will provides:

"First: I give, devise and bequeath unto my executors hereinafter named and unto the survivor or survivors of them, as trustees, all of my money, property and estate of what name or nature soever and wheresoever situate, with full and ample power, authority and discretion as I would have if living, to hold, control and manage, to bargain, sell, convey, mortgage, lease or otherwise to manage, control, dispose of, settle and distribute, the same or any part thereof or interest therein, with or without notice, in one or more parcels, at such times and for such prices as in their best judgment shall be deemed for the best interest of my estate, beneficiaries and legatees; and in aid of and to limit and control such power, I order and direct my Executors and Trustees to hold the New York Building and the Seattle Building and the Lands under and appurtenant thereto as one parcel and to sell or distribute the same together as one parcel at such time as in their best judgment they can do so without sacrificing my estate and the interests of my beneficiaries, and I expressly relieve any and all purchasers of any duty or liability as to the proper application of the proceeds or moneys paid to my executors and trustees, all in Trust however to and for the following uses and purposes, that is to say:   . . ."

Subdivision 4 of the sixth section of the will provides:

"Upon the decease of my said wife, and after the payment in full of each and every of the bequests and legacies in this will stated, if there shall remain any part of my estate, I give, devise and bequeath all the rest, residue and remainder thereof unto my children Nettie Horton Jones and

Caroline Horton, share and share alike; provided however, if at the time of such final distribution of such residue, there shall be then living a great grandchild or grandchildren, the descendants of my deceased daughter, Rebecca, as specified in the fourth subdivision of the third clause of this will, then said residue shall be divided and distributed to my said daughters, so that each shall receive one third thereof and the said grandchild or grandchildren the remaining third thereof."

It is admitted that Lauren Trethewey and Hazel Trethe‚ wey Rohne are the only living great-grandchildren of Re‚ becca Horton Briggs.

The seventh section provides:

"Seventh: I hereby nominate and appoint my daughter Caroline E. Horton of Seattle, my daughter Nettie Horton Jones and her husband W. G. Jones of Everett, and my grandnephew Charles E. Horton, and the survivor or survivors of them, without bonds, without and waiving letters, to be the executors and trustees of this my last will and testament, and after probate of this will, I order and direct that my estate shall be managed and settled without intervention, supervision, direction or control of the probate court or other court. I authorize my executors to compromise, compound and settle any claims and demands due me or to my estate, in such cases and upon such terms as they shall deem expedient; and I revoke all former wills by me made."

In due course, all of the trustees duly qualified and acted as such, but all of them, excepting plaintiff, are deceased, and plaintiff is now the duly appointed, qualified, and acting sole surviving trustee under the will.

Ida E. Briggs, referred to in subd. 4A of the third section of the will, above quoted, died on or about April 1, 1945, and plaintiff has paid her funeral and other expenses as directed in the will.

At the time of the execution of his will, and for several years previous, Dexter Horton had been a trustee of The Kansas City University. At the time of his death, this university was an active, going educational institution, and during this period was the owner of the real estate, buildings, and other equipment and facilities in connection with the maintenance of the institution.

On or about March 11, 1913, the trustees of The Kansas City University entered into a written agreement with the trustees of Campbell College, of Holton, Kansas, which agreement provided for the formation of a new corporation to be known as The Kansas City University Association. All of the assets of the respective corporations first mentioned were to be transferred to the new corporation, and conveyances and assignments were executed and delivered by The Kansas City University to the new corporation in accordance with such agreement. Thereafter, The Kansas City University did not own any of the properties theretofore owned and used by it in the maintenance of such educational institution, the same and the whole thereof having been thus conveyed to the new corporation known as The Kansas City University Association. Thereafter, The Kansas City University, the original corporation, did not at any time or place own or maintain The University of Kansas City, or any other educational institution, and existed in name only.

The educational institution at Kansas City continued to be owned and maintained by The Kansas City University Association until on or about August 7, 1926, at which time a written agreement was entered into between the Church of the United Brethren, as first party, and the Board of Education of the Methodist Protestant Church, as second party, which agreement was consented to by the board of trustees of The Kansas City University Association, as third party.

The Board of Education of the Methodist Protestant Church was and is a corporation organized under the laws of Pennsylvania. The Church of the United Brethren, one of the parties to the agreement, was and has continued to be an independent church or religious denomination, completely independent from the church denomination or denominations known as Methodist Protestant Church, or Methodist Episcopal South, or Methodist Episcopal Church.

Immediately after the execution of the 1926 agreement, the respective parties thereto executed the conveyances and assignments therein provided for, and, thereafter, the institution known as The Kansas City University continued to

be, and still is, owned and maintained by the Church of the United Brethren.

Defendant Board of Education claimed to have acquired all the right, title, and interest of The Kansas City University in and to the trust fund here under consideration, by virtue of assignments to The Kansas City University Association, and by the provisions of the agreement of August 7, 1926, particularly § 1, subd. F, which provides:

"It is agreed that all legacies and mortuary notes shall go, when paid, to the party originally intended. That is to say, that all given to Campbell College, or to its predecessors, before the merger of Campbell College and the Kansas City University, shall be paid to the third party [Board of Trustees of The Kansas City University Association], and all given to the Kansas City University before the merger with Campbell College shall be given, when paid, to the second party [Board of Education of the Methodist Protestant Church]."

All of the parties to this action other than the Board of Education of the Methodist Protestant Church deny that the Board of Education acquired any right, title, or interest in and to this trust fund by virtue of such agreement.

No question is raised as to the form of this proceeding. No question is raised but that Caroline E. Horton, plaintiff, Myrtle Jones, Lauren Trethewey, and Hazel Trethewey Rohne are the residuary legatees under the will of Dexter Horton, deceased.

It has been stipulated that Caroline E. Horton should be allowed as compensation for her services in closing the trust the sum of $580, that her attorneys should be allowed as compensation in bringing this action the sum of $1,500, and that Earl F. Townsend should be allowed a fee of $50 for his services in appraising the value of the securities on hand. The only question remaining to be determined, therefore, is whether the balance of the trust fund in the hands of plaintiff should be paid to the residuary legatees of Dexter Horton or to defendant Board of Education of the Methodist Protestant Church. This fund, at the time the decree was entered, consisted of $31,316.83 in cash, and interest-bearing bonds of the reasonable value of $27,800.

The court, after considering the stipulation and all the evidence in the case, determined that defendant Board of Education of the Methodist Protestant Church was entitled to no part of this fund, but that the fund should be distributed as follows: an undivided one third to Caroline E. Horton, an undivided one third to defendant Myrtle Jones, an undivided one sixth to defendant Lauren Trethewey, and an undivided one sixth to defendant Hazel Trethewey Rohne.

We desire to quote from the trial court's oral opinion, which is contained in the statement of facts, for the purpose of showing the court's view of the facts and its conclusions in regard thereto:

"Now, in creating this trust fund 'A', evidently he [Dexter Horton]was very fond of this particular granddaughter. It may have been by virtue of what Counsel has said, her incompetency. As to that I don't know, but I do know that in referring to this matter he speaks very affectionately of her and calls her 'My dear granddaughter, Ida E. Briggs,' and I gather as I go over this matter, as the professor suggested, that Mr. Horton wanted to see that that daughter was very, very, very well provided for. He directed the trustees who had the title to all this property to use every dollar of it in the way of interest to take care of her, and, if it was necessary, to use even all the principal to take care of her. It was for her. And then he must have realized, or his attorney must have advised him, that the possibility might arise that she might die before it could all be consumed, and then what. He was a Christian man, belonged to the Methodist Church. He was a trustee of the particular college that is mentioned in clause 'A,' and he wanted then, if there was any possibility of any amount being left over, maybe none, because the clause says, 'All of the unexpended principal and interest thereof, if any.'

"Now, his primary thought at that time was not any institution, was not any charitable affair at all. It was his daughter. But he realized that if there was anything left over, then this particular Methodist college of which he was well aware, which he knew about and which he was interested in, then as to whatever that amount be, maybe nothing, maybe something, maybe something great, whatever it is, 'That particular college I want to have it.' It has no reference of no connection, in my humble opinion, whatever with efforts to any charitable matter at all. It has strictly to do

with a certain designated party, 'And I want that party to have it. . . .'.

"Here I am confronted with an estate bequeathed to an institution which I hold at the time that this estate was ready for distribution, did not exist. It is a little different than was stated in the Shufeldt case. Edward Hughes was certain as to the identity of the remainderman, and he was capable and competent to take possession. Why, he is not even here asking to take possession. Some other institution is asking to take possession, not the designated remainderman, and he was capable and competent to take possession and enter into the enjoyment thereof the moment the prior estates would determine.

"I therefore hold as to that phase of the case that this estate has lapsed, there is an estate here belonging to somebody that is, in my humble opinion, undistributed, and therefore under the law I must hold that it goes to those designated in the residuary clause of this estate."

Defendant Board of Education timely filed a motion for new trial, which was denied, and thereafter, this defendant appealed from the judgment entered.

The following assignments of error are made: (1) in granting judgment in favor of plaintiff, Caroline E. Horton, and defendants Lauren Trethewey, Hazel Trethewey Rohne, and Myrtle Jones; (2) in holding that defendant Board of Education of the Methodist Protestant Church, a corporation, has no right, title, or interest in and to any of the funds, moneys, or securities constituting the trust fund in this case; (3) in holding as a matter of law that the Board of Education of the Methodist Protestant Church is not entitled to recover in this case, and that plaintiff, Caroline E. Horton, and defendants Myrtle Jones, Lauren Trethewey, and Hazel Trethewey Rohne are entitled to recover; and (4) in failing to grant the motion for new trial made by defendant Board of Education.

Appellant states in its brief that the assignments of error all raise substantially the same question, that is, whether or not the court properly ruled, as a matter of law, that respondents are entitled to recover in this case instead of appellant. Appellant further states in its brief:

"There are practically no questions of fact to be determined in this case and the questions of law involve the construction of a certain clause in Dexter Horton's will, and by such construction determine what disposition shall be made of the trust fund in the hands of the surviving trustee of Mr. Horton's will."

We have hereinbefore set out the particular provisions of the will whereby the trust fund was created, as well as the section in which all of Mr. Horton's property was devised to his trustees and in which the powers of such trustees were set out.

It is the first contention of appellant that

". . . the gift involved in this case [to Kansas City University], by virtue of said provisions, created a vested remainder in the Kansas City University on the death of Dexter Horton, subject only to the use of the life tenant, Ida E. Briggs."

Appellant then states:

"It is a well established rule of law in this state that if the postponement of the payment of a legacy or the enjoyment of the devise *is for the purpose of letting in an intermediate estate only,* the remainder shall be deemed vested at the death of the testator and the legatees or devisees are to be determined as of that date." (Italics ours.)

Appellant further argues:

"It will appear that the gift to the Kansas City University was made without any conditions, and the postponement of the gift was only made for the purpose of permitting Ida E. Briggs to have the use of such gift during her life time. The Kansas City University, being a legal entity, and being in existence at the time of the death of Dexter Horton, became vested of this gift on the date of the death of Dexter Horton,"

and that this vested remainder was alienable, assignable, and transferable.

While appellant cites other authority, it relies principally upon the case of *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6, to sustain its contentions, as set out above. We have given considerable thought and consideration to the *Shufeldt* case. In the first place, a reading of the cited case will reveal the trouble the courts have had with the question of

contingent and vested remainders. We quote from the cited case:

"It is probably true that no more intricate, technical and perplexing questions have arisen in the interpretation of wills than those which have had their origin in the effort to determine the nature of remainders, as to whether they are contingent or vested."

This court then quoted from *In re Blake's Estate*, 157 Cal. 448, 108 Pac. 287, relative to rules which have been applied in determining whether a remainder was contingent or vested. The quotation ends with the following paragraph:

" 'They are simply subordinate rules of construction which are applied only in the absence of all other indications in the will to the contrary and in support of an *intention* on the part of the testator to create a vested remainder.' " (Italics ours.)

■ In our opinion, the rule or rules to be followed in determining whether a remainder is vested or contingent are not as simple as stated by appellant, nor does the *Shufeldt* case so indicate or hold. In our opinion, the cited case announces, and that opinion is based upon, the following principles: In construing a will, the supreme purpose is to ascertain the actual intent of the testator, and that should be ascertained whenever possible from the language of the will itself, unaided by extrinsic facts. We quote further from the opinion:

"Without attempting to promulgate a complete canon of all the rules, the chief ones applicable to the present decision will be here suggested as cardinal, and without an effort being made to reconcile them, for such an effort would be futile.

" (1) If necessary in arriving at the intention of the testator, aid may be sought from the testator's situation, his relationship to the parties named in the testament, his disposition as evidenced by provisions to be made for them, and the general trend of his benevolences as disclosed by the testament. . . . It appears from an examination of Shufeldt's will that in general the objects of his bounty were the members of his own family. He gave no legacies to those who can be said to have been strangers to his blood. The provision made for Edwin Hughes [the remainderman] was a provision made, not for one of his own blood, but for one of his

family to whom, from the will itself, it appears he felt most friendly, for he selected him as a trustee and executor under the will, and as the husband of one of the testator's daughters he is recognized in the will as a beneficiary."

It may be admitted, as stated in the cited case, that the law favors the early vesting of estates, but it is further stated in the opinion, citing *Dougherty v. Thompson*, 167 N. Y. 472, 60 N. E. 760, that this rule

". . . is not a rule which would override the contrary intention of the testator, and is resorted to only for the purpose of avoiding 'perpetuities, intestacy, illegal suspension of the power of alienation, and to effect an intent which might otherwise be defeated.' In other words, it is a rule to be invoked in aid of the intention of the testator to create a vested remainder."

And so the rule contended for by appellant as applicable here, that

". . . if the postponement of the payment of the legacy or the enjoyment of the devise is for the purpose of letting in intermediate estates only, then the remainder shall be deemed vested at the death of the testator and the legatees and devisees are to be determined as of that date," (*Shufeldt v. Shufeldt, supra*)

is not a rule which would override the contrary intention of the testator, and the *Shufeldt* case does not so hold; nor does the case of *In re Ivy's Estate*, 4 Wn. (2d) 1, 101 P. (2d) 1074, also cited by appellant.

We are clearly of the opinion that it was not the intention of Dexter Horton, in making this charitable bequest to The Kansas City University, to postpone the payment of the bequest only for the purpose of letting in the life estate of Ida Briggs. We are also of the opinion, as was the trial court, that, in providing for and creating this trust, it was the intent and main purpose of Dexter Horton to provide for his incompetent granddaughter, and, as specifically provided, the trustees were instructed and authorized to use all the interest and principal of the fund if necessary for this purpose. We are further of the opinion that it was not the intent of the testator that The Kansas City University

should have a vested interest in the fund at his death; to the contrary, we are of the opinion it is a fair and reasonable conclusion to be drawn from the facts that no interest in the trust fund was to vest in appellant until the death of Ida Briggs, at which time the trustees were instructed to pay to the university all of the unexpended principal and interest, *if any*, remaining in the fund.

We are entirely in accord with the opinion in the *Shufeldt* case, based upon the facts in that case, and we are of the opinion that decision does not require a reversal of this case.

■ Having concluded that the gift to The Kansas City University was a charitable bequest which did not vest until the death of Ida Briggs, is appellant, as assignee of the right, title, and interest of such university, entitled to the fund in the hands of the trustee? At the time of the death of Ida Briggs, The Kansas City University had long since ceased to exist as a university, and had sold and disposed of all of its property used in the operation of such university. We are again of the opinion that it is a fair and reasonable conclusion to be derived from the admitted facts that it was the intent of Dexter Horton to make this bequest to The Kansas City University as a live and going institution. It appearing that there is not now, and that there was not at the time of the death of Ida Briggs, any such institution as The Kansas City University in existence and operating as a university, the purpose of the bequest failed, and it became impossible to effectuate the purpose of the testator in carrying out such bequest, and the law presumes that the testator intended the bequest to revert to his estate, effectuating this intent by creating a resulting trust in favor of the estate.

If we follow appellant, it seems to have misconceived the theory of a resulting trust in cases of this kind, for appellant argues and cites authority to the effect that, where a gift is made to a charity such as an educational institution, without any conditions or directions, the institution takes the beneficial interest, and no trust is created. We have no particular fault to find with the above statement as a general proposition, but our theory, which we think is supported by ample authority, is that in cases such as the one

under consideration, where the *purpose of the bequest has failed* and the *intent of the testator cannot be effectuated,* the law presumes that the testator intended the charitable bequest to revert to his estate, and effectuates this intent by creating a resulting trust in favor of the estate. See 54 Am. Jur. 154, Trusts, § 197; 14 C. J. S. 534, Charities, § 67; 2 Restatement of the Law of Trusts, § 413; 3 Scott on Trusts, 2087.

We also desire to refer to and quote from the case of *Duncan v. Higgins,* 129 Conn. 136, 26 A. (2d) 849. In that case, one Irene E. Harland died on January 19, 1925, leaving a will in which she devised and bequeathed the residue of her estate, real and personal, to a trustee, to pay over the income, or so much as he might think necessary, and such part of the principal as in his discretion he might deem necessary, for the maintenance and support of Aline M. Harland, and

" ' . . . upon her death to pay over the principal thereof with accumulations, or so much thereof as may then remain to my said step-brother, Charles L. Andrews, but if he shall not survive her, to pay the same upon her decease to the Second Unitarian Congregational Society of Brooklyn, New York.' "

Charles L. Andrews died in 1933, before the death of the life tenant.

In February of 1925, a majority of the trustees of the Second Unitarian Congregational Society of Brooklyn filed a petition in the supreme court of New York for dissolution of the society. In March, 1925, the court ordered that, upon the marshalling and liquidation of its assets and the payment of the balance, if any, to the First Unitarian Society of Brooklyn, the Second Society " 'be and its corporate existence is hereby dissolved.' " All the assets in the possession of the Second Society were paid to and delivered to the First Society on April 6, 1925, and the order of the court was complied with. We quote from the opinion:

"The two societies were religious corporations of the same denomination, maintaining houses of worship and doing the usual charitable work of churches in that denomination in

the same section of the city of Brooklyn. The First Society has continued to function in the same locality and to carry on that work, including the ministry of the gospel and certain charitable work formerly carried on by the Second Society, and most of the members of the Second Society have become members of the First Society.

"The Probate Court ordered that the trustee pay over and deliver the remainder of the fund to the First Society. . . .

"At the time of the death of the life tenant the Second Society was no longer in existence, and the residue of the estate could not in any event be paid to it. *Wright v. Wright,* 225 N. Y. 329, 337, 122 N. E. 213. . . .

"In the will before us there is simply a gift to a named corporation, the Second Unitarian Congregational Society, without any reference to the use to be made of the money. The will did not even establish a charitable trust, but the church would become owner of the money, to be used by it for any of its proper purposes. *Winchester v. Cox,* 129 Conn. 106, 111, 26 Atl. (2d) 592. Neither in the will nor in any intrinsic evidence is there any indication of a general intent on the part of the testatrix that the gift should be devoted to a charitable use to which the designation of the church to receive and administer it was secondary. It was simply a gift to a definite religious organization, which had ceased to exist before any interest vested in it. To authorize the payment to the First Society would be, not to carry out any intention that can be found in the will read in the light of surrounding circumstances, but to make a will for the testatrix, which we cannot do. [Citing authority.]"

And so, in the instant case, we are of the opinion there is nothing in the admitted facts which would justify this court in directing the trustee to pay to appellant the balance or the residue of the trust fund in her hands.

We may add here that, in our opinion, the doctrine of resulting trust, as applied to a case such as the instant one, is not controlled by technical distinctions between vested and contingent remainders, but is governed by the question of whether the testator's charitable program has been frustrated.

We are of the opinion that it is immaterial whether the interference with the testator's charitable program arises before or after the testator's death. See *Duncan v.*

*Higgins, supra; Wright v. Wright,* 225 N. Y. 329, 122 N. E. 213; *Waterbury Trust Co. v. Porter,* 131 Conn. 206, 38 A: (2d) 598; *Miller v. Riddle,* 227 Ill. 53, 81 N. E. 48, 118 Am. St. 261; *Board of Missions of M. E. Church, South v. Mayo,* 81 F. (2d) 449.

It may be contended that, in some of the cited cases, the institution to whom the bequest was made had been dissolved, while, in the instant case, The Kansas City University still exists in name only. We are of the opinion the principle of the cited cases would be applicable to the facts in the instant case, for the reasons hereinbefore expressed, particularly for the reason that, as stated, we are of the opinion it was the intent of Dexter Horton that this bequest go to the university as a live and going institution, as it was at the time the will was made.

We are further of the opinion that there is nothing in Dexter Horton's will which would permit of the application of the *cy pres* doctrine; in other words, there is nothing in this will which could be considered as expressing a general charitable intent, but, to the contrary, the bequest was made specifically to The Kansas City University. See 3 Scott on Trusts 2112:

."Where it clearly appears that the testator intended that the property should be applied only to the particular purpose which failed, or for the benefit of a particular association or corporation which was dissolved, it has been held that the doctrine of *cy pres* is not applicable and that the property reverts to the heirs or next of kin of the settlor."

See, also, 14 C. J. S. 535, § 67; *Duncan v. Higgins, supra.* In the last-cited case, the general rules relative to the *cy pres* doctrine, with which we are here in accord, are set out very clearly and at some length. We quote only a portion of these rules:

"The doctrine [*cy pres*] applies in situations where a testator has evidenced a dominant intent to devote his property to some charitable use but the circumstances are such that it becomes impossible to follow the particular method he directs, and the courts then sanction its use in some other way which will, as nearly as may be, approximate his general intent. [Citing authority.]  . . .

"Ordinarily where an organization to which a charitable gift or devise is made is incapable of taking it, the question whether its payment to another organization will be permitted is determined upon the basis of the applicability of the *cy pres* doctrine or doctrine of approximation; and that doctrine will be applied only where the court finds in the terms of the will, read in the light of surrounding circumstances, a *general intent* to devote the property to a charitable use, to which the intent that it go to the particular organization named is secondary. Zollmann, Charities, § 145 *et seq.*; 3 Scott, Trusts, p. 2078; 3 Pomeroy, Equity Jurisprudence (4th Ed.), p. 2308; 2 Perry, Trusts, (7th Ed.), § 726; note, 74 A. L. R. 671." (Italics ours.)

We have examined the authorities cited by appellant and feel that nothing could be gained by discussion thereof. It may be admitted that such authority supports some of the contentions made by appellant, but we are of the opinion that such authority in no way is determinative or controlling of the question here presented, under the theory which we have adopted as applicable to the facts in this case.

We are, therefore, of the opinion that the trial court properly concluded that the money remaining in the trust fund should be paid to the respondents in this case.

We are also of the opinion that it cannot be said the court erred in denying appellant's motion for new trial.

The judgment of the trial court is affirmed.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.

January 26, 1949. Petition for rehearing denied.